UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
KWAINE THOMPSON,

                         Plaintiff,

    -against-

CITY OF NEW YORK, CORRECTION OFFICER
NICOLE BLOOMFIELD, CORRECTION OFFICER
"JANE" SIMMONS, CAPTAIN DEBBIE PALMER-
CAMPBELL, CORRECTION OFFICER "JANE"
FRANCIS, CORRECTION OFFICER "JANE" DAVIS,
and CAPTAIN TONY MONTAGUE,

                         Defendants.
---------------------------------------------------------------------X

Docket No.

**COMPLAINT**

*Jury Trial Demanded*

       Plaintiff, by his attorneys, HELD & HINES, LLP, as and for his Complaint against the defendants herein, states and alleges as follows upon information and belief:

<u>PRELIMINARY STATEMENT</u>

       1.     Plaintiff commences this action pursuant to 42 U.S.C. §1983 seeking compensatory and punitive damages against Defendant Corrections Officers Bloomfield, Simmons, Francis, and Davis and Captains Palmer-Campbell and Montague for violating his constitutional rights while acting under color of law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988.

       2.     Plaintiff also asserts supplemental state law claims against the City of New York and Defendant Corrections Officers Bloomfield, Simmons, Francis, and Davis and Captains Palmer-Campbell and Montague for violations of their statutory and common law duties, as well as claims of sexual assault and abuse, negligence, negligent hiring, training, supervision and retention, intentional and negligent infliction of emotional distress, and violations of New York City Administrative Code § 10-1101 *et seq.*

3.     At all times alleged herein, Plaintiff was and remains a pretrial detainee confined to the custody, control, and care of the City of New York at its Department of Corrections' various jails, who has been repeatedly sexually assaulted and abused and forcibly touched without his consent by Defendant Corrections Officers Bloomfield, Simmons, and Captain Palmer-Campbell.

4.     New York State has long recognized the coercive power correction officers wield over incarcerated individuals, and the related risk of rape and other sexual abuse, by criminalizing all sexual activity between incarcerated individuals and correctional staff in New York Penal Law §130.05(3)(f), New York Penal Law §130.25(1), and New York Penal Law §130.40(1). The City of New York is aware that New York State has identified a significant risk of sexual coercion of individuals in custody, but it nonetheless permits a culture of systemic sexual abuse and victimization of prisoners to exist in its facilities.

5.     The pervasive culture of sexual abuse and victimization occurring in DOC facilities and clinics is common knowledge within and without the facilities. Correction officers[1] and clinic staff not only know that prisoners are regularly abused, but also which officers and staff commit the abuses, which type of prisoners are most often abused, and when and where the abuses occur.

## JURISDICTION AND VENUE

6.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

7.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

8.     Plaintiffs' claim for attorney's fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought

---

[1] As used herein, the term "correction officer" is intended to refer to DOC staff in the general and not to any specific rank, title, or position.

pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 for pendent claims arising under New York state and local law.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Bronx County, New York, which is within this judicial district.

## PARTIES

10.      At all times mentioned herein, the plaintiff was and remain a resident of the State of New York.

11.      At all times mentioned herein, the plaintiff was and remains a pretrial detainee confined to the custody, control, and care of Defendant City of New York and its Department of Correction.

12.      Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

13.      Upon information and belief, and at all times mentioned herein, the City maintains the City of New York Department of Correction (hereinafter referred to as the "DOC"), pursuant to law.

14.      At all times mentioned herein, Defendant Correction Officer Nicole Bloomfield (hereinafter, "C.O. Bloomfield") was a correction officer employed by the City of New York.

15.      At all times mentioned herein, Defendant C.O. Bloomfield was acting under color of law. Defendant C.O. Bloomfield is being sued in her individual and official capacities.

16.      At all times mentioned herein, Defendant Correction Officer "Jane" Simmons

(hereinafter, "C.O. Simmons") was a correction officer employed by the City of New York.

17.     At all times mentioned herein, Defendant C.O. Simmons was acting under color of law. Defendant C.O. Simmons is being sued in her individual and official capacities.

18.     At all times mentioned herein, Defendant Captain Debbie Palmer-Campbell (hereinafter, "Captain Palmer-Campbell") was a correction officer employed by the City of New York.

19.     At all times mentioned herein, Defendant Captain Palmer-Campbell was acting under color of law. Defendant Captain Palmer-Campbell is being sued in her individual and official capacities.

20.     At all times mentioned herein, Defendant Correction Officer "Jane" Francis (hereinafter, "C.O. Francis") was a correction officer employed by the City of New York.

21.     At all times mentioned herein, Defendant C.O. Francis was acting under color of law. Defendant C.O. Francis is being sued in her individual and official capacities.

22.     At all times mentioned herein, Defendant Correction Officer "Jane" Davis (hereinafter, "C.O. Davis") was a correction officer employed by the City of New York.

23.     At all times mentioned herein, Defendant C.O. Davis was acting under color of law. Defendant C.O. Davis is being sued in her individual and official capacities.

24.     At all times mentioned herein, Defendant Captain Tony Montague (hereinafter, "Captain Montague") was a correction officer employed by the City of New York.

25.     At all times mentioned herein, Defendant Captain Montague was acting under color of law. Defendant Captain Montague is being sued in his individual and official capacities.

26.     At all times mentioned herein, and upon information and belief, Defendants C.O. Bloomfield and C.O. Simmons were escort officers assigned to escort Plaintiff and other prisoners

from their housing unit to the VCBC clinic.

27.     At all times mentioned herein, and upon information and belief, Defendant C.O. Francis was an officer assigned to the VCBC clinic.

28.     At all times mentioned herein, and upon information and belief, Defendant C.O. Davis was an officer assigned to the VCBC clinic.

29.     At all times mentioned herein, and upon information and belief, Defendant Captain Palmer-Campbell was assigned to the GRVC clinic.

30.     At all times mentioned herein, and upon information and belief, Defendant Captain Montague was assigned to Plaintiff's housing unit in VCBC.

31.     Upon information and belief, and at all times mentioned herein, the City and DOC owned, operated, maintained, managed, supervised, directed, and/or controlled the jail facilities located within the City of New York.

32.     Upon information and belief, and at all times mentioned herein, the City and/or DOC owned, operated, maintained, managed, supervised, directed, and/or controlled the clinics located within DOC facilities.

## STATEMENT OF FACTS

33.     Beginning in or about September 2020 and continuing through August 2021, Plaintiff was regularly and routinely sexually abused, victimized, and harassed by Defendants C.O. Bloomfield and C.O. Simmons on separate but numerous occasions in the clinic of the Vernon C. Bain Center ("VCBC") and elsewhere within the facility.

34.     As a result of having sexual contact with Defendant C.O. Bloomfield, Plaintiff contracted chlamydia.

35.     On or about December 18, 2021, Defendant Captain Palmer-Campbell sexually

abused Plaintiff in the George R. Vierno Center ("GRVC") clinic.

36.    Plaintiff did not want to have sex with Defendants C.O. Bloomfield, C.O. Simmons and/or Captain Palmer-Campbell.

37.    Plaintiff did not consent to having sex with Defendants C.O. Bloomfield, C.O. Simmons and/or Captain Palmer-Campbell.

38.    Between September 2020 and June 2021, Plaintiff had oral and vaginal sex with Defendant C.O. Bloomfield approximately twenty (20) times.

39.    On numerous occasions, Defendant C.O. Bloomfield threatened Plaintiff that if he refused to have sex with her that she would send him to the box.

40.    Between January 2021 and August 2021, Plaintiff had oral sex with Defendant C.O. Simmons approximately four (4) times.

41.    Defendants C.O. Francis and C.O. Davis, on separate occasions, caught Defendants C.O. Bloomfield and C.O. Simmons engaging in unlawful sexual acts with Plaintiff in the facility clinic and failed to intervene to stop said abuse and failed to report said abuse as required by law.

42.    In addition to the aforesaid sexual acts, Defendants C.O. Bloomfield and C.O. Simmons also regularly and routinely stuck their hands down Plaintiff's pants and grabbed his penis while escorting him to the VCBC clinic.

43.    Contemporaneous to the sexual abuses by Defendants C.O. Bloomfield and C.O. Simmons, Plaintiff reported the aforesaid sexual abuses and victimization to Defendant Captain Montague, who failed to report same as required, failed to remove Plaintiff from contact with Defendants C.O. Bloomfield and C.O. Simmons, and failed to take any action to prevent further sexual abuse by these defendants. As a result of Defendant Captain Montague's deliberate indifference and failure to intervene and report the aforesaid abuses, Plaintiff continued to be

sexually victimized by Defendants C.O. Bloomfield and C.O. Simmons.

44.    On or about June 13, 2021, Defendant C.O. Bloomfield threatened Plaintiff with baseless punitive action (including but not limited to writing a misbehavior report, sending him to SHU, and notifying the judge in his criminal case) when she erupted in a jealous rage and yelled out in front of C.O. Kingsley and over twenty (20) prisoners, "That's MY dick!" and threatened Plaintiff that she better not find out that Defendant C.O. Simmons was also having sex with him. Upon information and belief, C.O. Kingsley failed to report same as required, failed to remove Plaintiff from contact with Defendants C.O. Bloomfield and C.O. Simmons, and failed to take any action to prevent further sexual abuse by these defendants.

45.    In further retaliation and retribution taken against Plaintiff at that time, Defendant C.O. Bloomfield refused to escort Plaintiff to the clinic to receive his prescribed medication and then falsely documented in the logbook that Plaintiff refused the visit.

46.    On June 14, 2021, Plaintiff, by counsel, sent an email to DOC's Constituent Services and reported that

> [Plaintiff] was having "at least 2 unlawful and coercive sexual encounters with C.O. Bloomfield (Shield 14438) at VCBC within the last 6 months. On both occasions, they performed oral sex on each other. Yesterday [June 13, 2021], C.O. Bloomfield threatened [Plaintiff] with punitive action (including SHU) in front of the entire house because she thought he was having sex with C.O. Simmons and yelled, "That's MY dick!" for all to hear.
>
> [Plaintiff] previously reported the aforesaid sexual contacts to Captain Montague.
>
> Please refer this matter for immediate investigation…

47.    Following this email, upon information and belief, a PREA-mandated investigation was initiated. Notwithstanding, the sexual abuses continued.

48.    Thereafter, on August 31, 2021, Plaintiff, by counsel, again emailed DOC's

Constituent Services to report that

> Following up on my prior emails, it is clear that these matters have not been faithfully investigated or resolved. I ask again that these matters be immediately looked into and that I be updated forthwith…
>
> … [Plaintiff] has continued to be sexually victimized by staff. Most recently, by CO Simmons on a date between August 1st - 10th. As a result of that unlawful sexual encounter, [Plaintiff] contracted chlamydia from CO Simmons. These sexual encounters are clearly in violation of criminal law and your failure to report, investigate and cure same are in violation of all PREA guidelines.

49.     Thereafter, Plaintiff was transferred to the SHU at GRVC as a result of a Court Order related to his pending criminal case. It was not as a result of the sexual abuses at VCBC.

50.     In the early morning hours of December 18, 2021, while Plaintiff was in the GRVC clinic for mental health observation, Defendant Captain Palmer-Campbell came into Plaintiff's cubicle, woke him up, and began performing oral sex on him. She then tried to remove Plaintiff from the clinic and take him back to his SHU cell to have sex with him; however, Plaintiff refused, and Defendant Captain Palmer-Campbell did not forcibly compel him to go.

51.     Plaintiff reported this incident with Defendant Captain Palmer-Campbell to the PREA hotline.

52.     It is a well-known and established practice of DOC officers to engage in unlawful, forceful and/or coercive acts with prisoners in facility clinics, of which Defendant City had prior knowledge.

53.     Despite prior complaints and grievances, including substantiated allegations, of criminal misconduct being committed against prisoners by clinic staff and correction officers in the clinic areas of DOC facilities, including but not limited to sexual abuse and rape, beatings, threats, and coercing of statements and acts, as well as other unlawful conduct, Defendant City has failed to increase the degree of supervision thereat and/or take any other reasonable measures to

provide greater security within the clinic areas.

54.    Defendant City's inadequate supervision and staffing of the aforesaid facility clinics made it easy for Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell to forcibly touch, sexually harass, and sexually assault the plaintiff.

55.    Defendant City's inadequate supervision and staffing of the aforesaid clinics made it easy for Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell to forcibly touch, sexually harass, and sexually assault the plaintiff as whatever staff were present were complicit in and/or deliberately indifferent to said defendants' sexual victimization of Plaintiff in each instance.

56.    DOC staff and officers, including but not limited to Defendants C.O. Davis, C.O. Francis and Captain Montague, were aware that Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell were abusing the plaintiff at the time said abuses occurred.

57.    Plaintiff contemporaneously reported Defendants C.O. Bloomfield and C.O. Simmons, abuses to DOC officials; however, DOC officials failed to remove Defendants C.O. Bloomfield and C.O. Simmons from contact with Plaintiff.

58.    Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell were never removed from duty pending an investigation, and a faithful investigation was never conducted into Plaintiff's claims of sexual assault by Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell. Accordingly, the abuses alleged were allowed to continue unabated.

59.    As a result thereof, Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell were able to victimize the plaintiff with impunity while their co-workers,

supervisors, and clinic staff chose to protect them from detection rather than Plaintiff from further abuse.

60.     With the enactment of the Prison Rape Elimination Act of 2003, the National Prison Rape Elimination Commission was created and charged with drafting standards for eliminating prison rape. Those standards were published in June 2009 and given to the U.S. Department of Justice for review and passage as a final rule. The Department of Justice published the final PREA Standards in the Federal Register on June 20, 2012, and they became effective August 20, 2012.

61.     Upon information and belief, VCBC and GRVC were not fully compliant with PREA Standards during the relevant time periods alleged herein.

62.     Due to Defendant City's long-standing failure to implement mandated PREA reforms and standards, including but not limited to the policies, training, investigations, reporting and leadership from the top down, Defendant City and its supervisory personnel were deliberately indifferent to the sexual safety and threats faced by their inmate population in general and Plaintiff in particular and were the moving force behind the sexual assaults suffered by Plaintiff.

### FIRST CLAIM FOR RELIEF:
### CLAIMS AGAINST DEFENDANT C.O. BLOOMFIELD
### PURSUANT TO 42 U.S.C. § 1983

63.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

64.     At all relevant times, Defendant C.O. Bloomfield was an employee of Defendant City.

65.     At all relevant times, Defendant C.O. Bloomfield was acting under color of state law.

66.     As set forth above, Defendant C.O. Bloomfield forcibly touched, sexually assaulted, and sexually abused the plaintiff.

67.     As set forth above, Plaintiff did not want to engage in any sexual activity with Defendant C.O. Bloomfield.

68.     As set forth above, Plaintiff did not consent to engaging in any sexual activity with Defendant C.O. Bloomfield.

69.     As set forth above, Defendant C.O. Bloomfield did transmit a sexually transmitted disease to Plaintiff.

70.     As set forth above, Defendant C.O. Bloomfield did retaliate against Plaintiff and refuse to escort him to the clinic for necessary medication.

71.     As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

72.     As set forth above, Defendant C.O. Bloomfield did violate Plaintiff's constitutional rights and was deliberately indifferent to and/or consciously disregarded an excessive risk to Plaintiff's health and safety.

### SECOND CLAIM FOR RELIEF:
### CLAIMS AGAINST DEFENDANT C.O. SIMMONS
### PURSUANT TO 42 U.S.C. § 1983
_____

73.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

74.     At all relevant times, Defendant C.O. Simmons was an employee of Defendant City.

75.     At all relevant times, Defendant C.O. Simmons was acting under color of state law.

76.     As set forth above, Defendant C.O. Simmons forcibly touched, sexually assaulted, and sexually abused the plaintiff.

77.     As set forth above, Plaintiff did not want to engage in any sexual activity with Defendant C.O. Simmons.

78.     As set forth above, Plaintiff did not consent to engaging in any sexual activity with Defendant C.O. Simmons.

79.     As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

80.     As set forth above, Defendant C.O. Simmons did violate Plaintiff's constitutional rights and was deliberately indifferent to and/or consciously disregarded an excessive risk to Plaintiff's health and safety.

### THIRD CLAIM FOR RELIEF:
### CLAIMS AGAINST DEFENDANT CAPTAIN PALMER-CAMPBELL
### PURSUANT TO 42 U.S.C. § 1983
_____

81.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

82.     At all relevant times, Defendant Captain Palmer-Campbell was an employee of Defendant City.

83.     At all relevant times, Defendant Captain Palmer-Campbell was acting under color of state law.

84.     As set forth above, Defendant Captain Palmer-Campbell forcibly touched, sexually assaulted, and sexually abused the plaintiff.

85.     As set forth above, Plaintiff did not want to engage in any sexual activity with

Defendant Captain Palmer-Campbell.

86.     As set forth above, Plaintiff did not consent to engaging in any sexual activity with Defendant Captain Palmer-Campbell.

87.     As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

88.     As set forth above, Defendant Captain Palmer-Campbell did violate Plaintiff's constitutional rights and was deliberately indifferent to and/or consciously disregarded an excessive risk to Plaintiff's health and safety.

**FOURTH CLAIM FOR RELIEF:**
**CLAIMS AGAINST DEFENDANTS C.O. DAVIS,**
**C.O. FRANCIS, AND CAPTAIN MONTAGUE**
**PURSUANT TO 42 U.S.C. § 1983**
_____

89.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

90.     At all relevant times, Defendant C.O. Davis was an employee of Defendant City.

91.     At all relevant times, Defendant C.O. Davis was acting under color of state law.

92.     At all relevant times, Defendant C.O. Francis was an employee of Defendant City.

93.     At all relevant times, Defendant C.O. Francis was acting under color of state law.

94.     At all relevant times, Defendant Captain Montague was an employee of Defendant City.

95.     At all relevant times, Defendant Captain Montague was acting under color of state law.

96.     At all relevant times, Defendant Captain Montague was assigned to and charged

with the responsibility to supervise DOC officers.

97. As set forth above, Defendants C.O. Davis, C.O. Francis, and Captain Montague were each personally aware that unlawful sexual activity was occurring between Defendant C.O. Bloomfield and Plaintiff.

98. As set forth above, Defendants C.O. Davis, C.O. Francis, and Captain Montague were each personally aware that unlawful sexual activity was occurring between Defendant C.O. Simmons and Plaintiff.

99. Pursuant to DOC Directive, PREA Standards, and the law, Defendants C.O. Davis, C.O. Francis, and Captain Montague were required to promptly report the sexual activity alleged herein, but each failed to do so.

100. Pursuant to DOC Directive, PREA Standards, and the law, Defendants C.O. Davis, C.O. Francis, and Captain Montague were required to promptly remove Plaintiff from contact with Defendants C.O. Bloomfield and C.O. Simmons, but each failed to do so.

101. Pursuant to DOC Directive, PREA Standards, and the law, Defendants C.O. Davis, C.O. Francis, and Captain Montague were required to promptly take reasonable action to prevent further sexual abuse by Defendants C.O. Bloomfield and C.O. Simmons, but each failed to do so.

102. Pursuant to DOC Directive, PREA Standards, and the law, Defendants C.O. Davis, C.O. Francis, and Captain Montague were required to promptly notify their superiors about what they personally saw and/or was reported to them by Plaintiff, but each failed to do so.

103. Pursuant to DOC Directive, PREA Standards, and the law, Defendants C.O. Davis, C.O. Francis, and Captain Montague were required to promptly make medical and mental health treatment available to Plaintiff, but each failed to do so.

104. Despite DOC Directive, PREA Standards, and the law, Defendants C.O. Davis,

C.O. Francis, and Captain Montague failed to intervene on behalf of Plaintiff in any and all respects.

105.    Despite DOC Directive, PREA Standards, and the law, Defendants C.O. Davis, C.O. Francis, and Captain Montague failed to protect Plaintiff from further abuse and victimization in any and all respects.

106.    Due to the deliberately indifferent acts and omissions aforesaid by Defendants C.O. Davis, C.O. Francis, and Captain Montague, the abuses alleged were allowed to continue unabated.

107.    Due to the deliberately indifferent acts and omissions aforesaid by Defendants C.O. Davis, C.O. Francis, and Captain Montague, Defendants C.O. Bloomfield and C.O. Simmons were able to victimize the plaintiff with impunity.

108.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

109.    As set forth above, Defendants C.O. Davis, C.O. Francis, and Captain Montague did violate Plaintiff's constitutional rights and were deliberately indifferent to and/or consciously disregarded an excessive risk to Plaintiff's health and safety.

## **PENDANT STATE CLAIMS**

110.    This action is commenced, including all applicable tolls, within the applicable statutes of limitations.

111.    On or about July 9, 2021, Plaintiff caused a Notice of Claim to be duly served and filed with the City of New York setting forth the time, place, substance of claim, and description of injuries sustained by the plaintiff.

112.    More than thirty (30) days have elapsed since said date and the aforesaid defendant has neglected and refused to make an adjustment thereof.

113.    On or about February 3, 2022, the City of New York conducted its Municipal Hearing pursuant to Section 50-h of the General Municipal Law.

114.    This action is commenced, including all applicable tolls, within one (1) year and ninety (90) days after said cause of action arose.

115.    This action falls within one or more of the exceptions set forth in CPLR §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: SEXUAL ABUSE, SEXUAL ASSAULT, FORCIBLE TOUCHING AND BATTERY

116.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

117.    As set forth above, Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell did initiate nonconsensual sexual acts with Plaintiff; did engage in nonconsensual sexual acts with Plaintiff; did forcibly touch Plaintiff; did sexually harass Plaintiff; did intimidate and threaten Plaintiff with retaliation if he failed to engage in sexual acts with them; and did sexually assault and abuse Plaintiff.

118.    Pursuant to New York Penal Law §130.05(3)(f), Plaintiff, as a matter of law, is incapable of consenting to engaging in sexual acts with Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell.

119.    As alleged herein, Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell's unlawful acts against Plaintiff constituted harmful and offensive contact to Plaintiff's person, which were done intentionally by Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell and without Plaintiff's consent or legal justification.

120.    As alleged herein, Defendants C.O. Bloomfield, C.O. Simmons, and Captain

Palmer-Campbell's unlawful acts against Plaintiff created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell and without Plaintiff's consent or legal justification.

121.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

### SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENCE

122.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

123.    At all times alleged herein, Defendant City was charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of all correction officers, supervisors, and staff in its employ, including but not limited to the defendants named herein.

124.    At all times alleged herein, Defendant City was entrusted with the custody and care of those persons detained and confined to Department of Correction custody, including but not limited to the plaintiff.

125.    At all times alleged herein, Defendant City assumed a duty of care to the plaintiff.

126.    At all times alleged herein, Defendant City was entrusted with a special duty of care to the plaintiff.

127.    Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, owed a duty of care to reasonably

protect Plaintiff while he was in their custody, control, and care.

128.     As set forth above, Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, knew or by reasonable diligence should have known that Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell were engaging in unlawful sexual acts with Plaintiff.

129.     As set forth above, Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, knew or by reasonable diligence should have known that the VCBC and GRVC clinics were being used by officers and staff to engage in unlawful sexual acts with Plaintiff.

130.     Despite having notice of the unlawful sexual acts alleged herein, both actual and constructive, Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, negligently failed to take timely and sufficient action in order to remedy same.

131.     Despite having notice of the unlawful sexual acts alleged herein, both actual and constructive, Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, negligently failed to take timely and sufficient action in order to prevent said sexual assaults and abuses from occurring.

132.     Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, failed to intervene in each instance alleged so as to mitigate the extent of Plaintiff's injuries. Rather, Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, enabled and prolonged the abuse and victimization by ignoring and/or covering up their fellow co-workers' misconduct.

133.    Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, failed to perform sufficient inspections, rounds, searches, and the like of the VCBC and GRVC clinics, thus affording Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell sufficient time and opportunity to sexually abuse Plaintiff threat.

134.    Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, knew or should have known that their careless, negligent, and reckless supervision, inspection, and control of the subject clinic areas where the sexual abuses occurred created an unreasonable risk of harm to the plaintiff and did cause Plaintiff's physical, emotional and psychological injuries, pain and suffering.

135.    As set forth above, Defendant City, its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague, were negligent in their ownership, operation, supervision, enforcement and/or control of the VCBC and GRVC clinic areas where the sexual abuses occurred; in failing to reasonably and adequately supervise and control the detainees/inmates in their custody and control, including but not limited to the plaintiff; in failing to reasonably and adequately supervise and control DOC officers, supervisors and staff under their direction and control; in permitting Defendants C.O. Bloomfield and C.O. Simmons to take Plaintiff into secured rooms within the VCBC clinic in order to engage in unlawful sexual acts with him; in having a culture that caused Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell to believe that no adverse action would be taken against them if caught engaging in sexual acts with Plaintiff; in failing to protect the health and welfare of the plaintiff; in failing to provide the plaintiff with reasonably safe living conditions while he was confined to their custody and control; in the negligent supervision of the plaintiff; in failing to quickly and

diligently intercede on Plaintiff's behalf; in setting a trap for the plaintiff; in failing to take cognizance of a dangerous and escalating situation; in failing to have an adequate policy to curtail officer-on-inmate sexual abuse and victimization; in failing to take reasonable measures and precautions to avoid and/or mitigate the incidence of officer-on-inmate sexual abuse and victimization; in violating the plaintiff's civil, statutory and common law rights; in infringing upon the freedoms afforded to the plaintiff; in being deliberately indifferent to Plaintiff's health, safety, and security; in causing and/or allowing the VCBC and GRVC clinics to be and remain violent and dangerous for those imprisoned therein; in causing, creating and/or allowing unlawful jail conditions to be and remain; in having a policy, either written or by custom, which turns a blind eye to officer-on-inmate sexual abuse and victimization; in having a policy, either written or by custom, which accepts officer disinterest, indifference and/or uninvolvement during incidents of officer-on-inmate sexual abuse and victimization; in having a policy, either written or by custom, which deems *female* officer on *male* prisoner sexual abuse and victimization to be minor, slight, insignificant, and/or not worthy of reporting; in failing to timely prevent and/or mitigate the subject incidents despite having notice, time and opportunity to do so; in failing to reasonably and adequately discipline and/or segregate Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell from Plaintiff following reported incidents of sexual abuse and victimization; in permitting Plaintiff to be left unattended and unsupervised with Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell; in failing to fully, faithfully and reasonably investigate Plaintiff's allegations and prior allegations made against Defendants C.O. Bloomfield, C.O. Simmons, and Captain Palmer-Campbell; in failing to have an adequate policy to ensure the truthful and consistent reporting of sexual violence and victimization; in being negligent towards the plaintiff's health, safety, and security; in causing and allowing clinic areas to be and remain a

violent and dangerous place for prisoners; in causing, creating and/or allowing unlawful conditions to be and remain; in having a policy, either written or by custom, which accepts and/or promotes disinterest, indifference, apathy and/or uninvolvement during incidents of sexual violence and victimization; in failing to adequately train clinic staff; in failing to have trained personnel; in causing and/or allowing the plaintiff to be harmed; in causing and creating a dangerous condition conducive to causing injury; in causing and creating a dangerous and hazardous condition to exist; in creating and allowing a nuisance to exist; in failing to provide for the safety of the plaintiff; in failing to adequately train the correction officers charged with maintaining security of the subject locations and control; that the occurrences alleged herein would not have occurred but for the negligence of the defendants; in causing, permitting and/or allowing the plaintiff to be sexually abused and victimized; and said defendants were otherwise negligent, careless and reckless in the instance.

136.    Inasmuch as Defendants C.O. Davis, C.O. Francis, and Captain Montague, as well as other agents, servants and/or employees of Defendant City, were acting for, upon, and in furtherance of the business of their employer, Defendant City, and within the scope of their employment, Defendant City is liable under the doctrine of *respondeat superior* for the tortious actions of its agents, employees and/or servants, including but not limited to Defendants C.O. Davis, C.O. Francis, and Captain Montague.

137.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

## THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

138.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the

preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

139.    The offenses alleged herein resulted, in whole or in part, due to the failure of defendant City to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons during their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect the rights of those persons confined to their custody and control, including but not limited to the plaintiff.

140.    Defendant City was negligent in its hiring, training, retention, supervision, direction, control, appointment and/or promotion of its employees, agents and/or servants, including but not limited to each of the defendants named herein.

141.    The failure of Defendant City to adequately train its employees, agents and/or servants, including but not limited to each of the defendants named herein, in the exercise of their employment functions, and their failure to enforce the United States Constitution, the laws of the State of New York, and the rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of those persons in their custody, including the plaintiff herein, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

142.    Defendant City was careless and reckless in hiring, appointing, retaining, promoting and supervising their employees, agents and/or servants, including but not limited to each of the defendants named herein, in that said employees lacked the experience, ability, and judgment to be employed by the City and bestowed with the authority given to them; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in

particular, hiring the defendant-employees who lacked the mental capacity, judgment, and ability to function as employees of said defendants; in that the defendant-employees lacked the maturity, judgment, sensibility and intelligence to be employed by Defendant City; in that Defendant City knew or should have known of the lack of ability, judgment, experience and maturity of the defendant-employees when they hired them; in that Defendant City, its agents, servants and/or employees, failed to suspend and/or terminate the defendant-employees when such action was required and necessary; and in being otherwise careless, negligent and reckless in the instance.

143.    Defendant City knew or should have known in the exercise of reasonable care, the propensities of each of the defendants named herein to engage in the wrongful conduct heretofore alleged in this Complaint.

144.    The aforesaid acts and omissions of defendant City, its employees, agents and/or servants, including but not limited to each of the defendants named herein, resulted in the plaintiff being sexually assaulted and victimized.

145.    Defendant City knew or should have known that its policies, customs, and practices, as well as its negligent supervision, training, appointment and promotion of its employees, agents and/or servants, including but not limited to each of the defendants named herein, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

146.    That the sexual harassment, assaults, abuse, and victimization of the plaintiff, as set forth above, were the reasonably foreseeable consequence of Defendant City's negligent conduct.

147.    The aforesaid negligence of Defendant City in its hiring, screening, retention, supervision, training, appointment and promotion practices resulted in the sexual harassment, intimidation, assault and victimization of Plaintiff; Plaintiff's abuses by Defendants C.O.

Bloomfield, C.O. Simmons and Captain Palmer-Campbell being trivialized, minimized and/or covered up; the cause, nature and extent of the plaintiff's injuries being trivialized, minimized and/or covered up; the plaintiff's statutory and common law rights being violated; and Plaintiff to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

148.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

149.    As set forth above, Defendants C.O. Bloomfield, C.O. Simmons and Captain Palmer-Campbell's aforesaid conduct was intentional, malicious and excessive, and served no reasonable or legitimate penological interest.

150.    As set forth above, Defendants C.O. Davis, C.O. Francis, and Captain Montague's aforesaid conduct was intentional, reckless and/or grossly negligent, and served no reasonable or legitimate penological interest.

151.    As set forth above, Defendant City's aforesaid acts and omissions were negligent and served no reasonable or legitimate penological interest.

152.    As set forth above, the defendants' intentional, reckless and/or negligent conduct alleged herein was of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's psychological and emotional well-being.

153.    As a result of the foregoing, Plaintiffs suffered and continue to suffer severe and permanent psychological and emotional injuries.

**FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 10-1105**
**"VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION LAW"**
_____

154.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if same were fully set forth herein.

155.    As set forth above, Defendants C.O. Bloomfield, C.O. Simmons and Captain Palmer-Campbell's actions against Plaintiff constituted felonies under New York State law and presented a serious risk of physical and emotional injury to Plaintiff, and were crimes of violence motivated by gender, committed because of gender or on the basis of gender, and due, at least in part, to an animus based on Plaintiff's gender.

156.    As set forth above, Defendants C.O. Bloomfield, C.O. Simmons and Captain Palmer-Campbell's conduct complained of herein violated the Victims of Gender-Motivated Violence Protection Law, New York City Administrative Code § 10-1101 *et seq*., and as such, Defendants C.O. Bloomfield, C.O. Simmons and Captain Palmer-Campbell are each liable to Plaintiff for compensatory and punitive damages, attorney's fees and costs, and such other relief as this Court may deem appropriate.

157.    As a direct and proximate result of Defendants C.O. Bloomfield, C.O. Simmons and Captain Palmer-Campbell's violation of New York City Administrative Code § 10-1101 *et. seq*., known as the "Victims of Gender-Motivated Violence Protection Act," Plaintiff sustained in the past, and will continue to sustain in the future, physical injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues in this matter.

**RELIEF**

Plaintiff respectfully requests the following relief, jointly and severally, as against each of the defendants:

1.      An award of compensatory damages against all defendants in an amount to be determined at trial;

2.      An award of punitive damages against Defendants C.O. Bloomfield, C.O. Simmons, C.O. Francis, C.O. Davis, Captain Palmer-Campbell, and Captain Montague in an amount to be determined at trial;

3.      An award of attorney's fees, expert's fees, costs, and disbursements; and

4.      Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
        February 22, 2022

                                                Respectfully submitted,

                                                HELD & HINES, LLP
                                                2004 Ralph Avenue
                                                Brooklyn, New York 11234
                                                (718) 531-9700
                                                phines@heldhines.com

                                                *Attorneys for Plaintiff*


                                                */s/ Philip Hines*_____
                                                Philip M. Hines, Esq.