**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KWAINE THOMPSON,

        *Plaintiff*,

   vs.

CITY OF NEW YORK, et al.

        *Defendants*.

Action No.  1:22-cv-01458-JPO-KHP

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................1

   I.   Relevant Context ................................................................................................................1

   II.   VCBC (The Boat) – CO Brumfield and CO Simmons .....................................................1

   III.   GVRC – Captain Palmer-Campbell ..................................................................................2

   IV.   PREA Complaints and Subsequent DOC Investigations ...................................................3

   V.   Procedural History.............................................................................................................3

STANDARD OF REVIEW ..........................................................................................................4

ARGUMENT ..............................................................................................................................5

   I.   § 1983 Actions ..................................................................................................................5

   II.   The City Is Not Entitled To Summary Judgment Based On Credibility Grounds (The *Jeffreys* Exception). ........................................................................................................5

   III.   Sexual Abuse Claims.........................................................................................................7
      A.   Analytical Framework ..............................................................................................7

      B.   The Sexual Abuse and Harassment Allegations............................................................9

   IV.   Failure to Intervene/Protect Claims .................................................................................10
      A.   Analytical Framework ............................................................................................10

      B.   Failure-to-Protect/Intevene Claims ........................................................................10

   V.   Remaining Arguments .....................................................................................................12
      A.   Exhaustion .............................................................................................................12

      B.   State-Law Claims. ..................................................................................................12

      C.   Other Theories of Liability .....................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blake v. Sexton*,
No. 12-CV-7245 (ER), 2016 WL 1241525 (S.D.N.Y. Mar. 24, 2016)). .....................................11

*Campbell v. Trew*, No.
18-CV-5507 (NSR), 2021 WL 3292226 (S.D.N.Y. July 30, 2021) .............................................6

*Cash v. Cty. of Erie*,
654 F.3d 324(2d Cir. 2011) ......................................................................................................9

*Cook v. Dewitt*,
No. 19 CIV. 2780 (NSR), 2022 WL 580774 (S.D.N.Y. Feb. 25, 2022) ....................................8

*Crawford v. Cuomo*,
796 F.3d 252 (2d Cir. 2015). ...............................................................................................7, 8

*DeJesus v. Malloy*,
531 F. Supp. 3d 650 (W.D.N.Y. 2021)......................................................................................9

*Dinkins v. Gustave*,
No. 19-CV-2336 (JPC) (KHP), 2022 WL 1051110  (S.D.N.Y. Jan. 12, 2022) ............................6

*Doe v. City of New York*,
No. 15-CV-0117(AJN), 2018 WL 6095847 (S.D.N.Y. Nov. 21, 2018) .....................................11

*Frost v. New York City Police Dep't*,
980 F.3d 231, 242 (2d Cir. 2020) .........................................................................................5, 6

*Gallo v. Prudential Residential Servs., Ltd. P'Ship*,
22 F.3d 1219 (2d Cir. 1994) ....................................................................................................4

*Harris v. Miller*,
818 F.3d 49 (2d Cir. 2016) ....................................................................................................13

*Holcomb v. Iona Coll.*,
521 F.3d 130 (2d Cir. 2008); ....................................................................................................4

*House v. City of New York*,
2020 WL 6891830 (S.D.N.Y. Nov. 24, 2020) ...........................................................................4

*Jaramillo v. Weyerhaeuser Co.*,
536 F.3d 140, 145 (2d Cir. 2008));............................................................................................4

*Jeffreys v. City of New York*,
426 F.3d 549 (2d Cir. 2005) ........................................................................................5, 6

*Johnson v. Killian*,
680 F.3d 234 (2d Cir. 2012). ..........................................................................................4

*Kee v. City of New York*,
12 F. 4th 150 (2d Cir. 2021) ............................................................................................5

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015). .......................................................................................................8

*Lucente v. County of Suffolk*,
980 F.3d 284 (2d Cir. 2020) ............................................................................................5

*M.T. v. City of New York*,
325 F. Supp. 3d 487 (S.D.N.Y. 2018) .........................................................................9, 12

*Matheson v. Kitchen*,
515 Fed.Appx. 21 (2013) .................................................................................................6

*Moore v. Casselberry*,
584 F. Supp. 2d 580 (W.D.N.Y. 2008) .............................................................................6

*Portillo v. Webb*,
2022 WL 2337380 (S.D.N.Y. June 29, 2022) ..................................................................5

*Sanchez v. Nassau Cnty.*,
662 F. Supp. 3d 369 (E.D.N.Y. 2023) .......................................................................10, 11

*Seward v. Antonini*,
No. 20-CV-9251 (KMK), 2023 WL 6387180 (S.D.N.Y. Sept. 29, 2023) ......................10

*Seweid v. Cnty. of Nassau*,
2024 WL 693981 (E.D.N.Y. Feb. 20, 2024) ....................................................................8

*Stone #1 v. Annucci*,
No. 20-CV-1326 (RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021) .........................10

*Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)) ...........................................................8

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) ............12

iv

**Statutes**

42 U.S.C. § 1983 ...........................................................................................................6

Fed. R. Civ. P. 56 ......................................................................................................5, 14

N.Y. Penal Law §§ 130.05 ..........................................................................................10

## PRELIMINARY STATEMENT

Plaintiff Kwaine Thompson ("Plaintiff" or "Thompson") respectfully submits the following in opposition to the motion for summary judgment, dated December 5, 2023, filed by the defendants (collectively, "Defendants" or the "City").[1]

## BACKGROUND

### I.   Relevant Context

This lawsuit arises from Plaintiff Kwaine Thompson's latest experience at Rikers Island. In August 2020, having spent a year in various buildings across Rikers, Plaintiff was transferred to the Vernon C. Bain Correctional Center (VCBC)—commonly known as the Boat—where he'd stay for the next year or so.

### II.   VCBC (The Boat) – CO Brumfield and CO Simmons

In September 2020, one month after Plaintiff arrived to VCBC, he met CO Brumfield and the two began developing a relationship. Pl. 56.1 ¶ 16. She asked him about his preferred cigarettes, dating history, and so on. *Id.* ¶ 20. Soon, Brumfield and Plaintiff started sexual relations—most often in the x-ray room. *Id.* ¶ 17. The two continued to engage in sexual relations, including both oral and vaginal sex, on multiple occasions. And the relationship would continue without issue for several months. Throughout, Brumfield warned Plaintiff that if he disclosed their relationship, she would inform DOC leadership about the mistake in Plaintiff's housing. Ex. 10 (lockdown order).

Around the same time, back in January 2021, Plaintiff became familiar with CO Simmons. *Id.* ¶¶ 18-19. Pl. Tr. 56:13-15 ("[Simmons] would tell me about her sex life with her boyfriend, the sex life at the gym… and how she likes to be bisexual"); 50H Tr. 20:14-16

---

[1] "Ex." refers to the exhibits attached to the declaration of Sami Elamad, dated April 5, 2024, in support of Plaintiff's opposition. "Pl. Dep." is available at Ex. 1, and "50H Tr." is available at Ex. 2.

("[Simmons said that she like to work out so she can have a lot of energy to have sex"). Simmons also began a personal relationship with Plaintiff, giving him gifts in exchange for sexual favors and so on. *Id.* ¶¶ 18-19.

Months later, in June 2021, Plaintiff and Brumfield had a heated, tense exchange in the dayroom over a logbook entry. *Id.* ¶¶ 21-24. They did so in front at least a dozen inmates and another CO. *Id.* ¶ 26. In Brumfield's own words, "[she] proceeded to call him a loser, a clown, and a dirty creep and everyone knows it." In contrast, Plaintiff counters that, in actuality, Brumfield was upset following rumors about his relationship with Simmons. . *Id.* ¶ 21; *see, e.g.,* 50H Tr. 44: 7-11 ("[Brumfield] found that I was having sex with Ms. Simmons, and she was so angry"). After several minutes, another officer—CO Kingsley—stepped in and physically tried to give Brumfield a gentle nudge towards the door. Ex. 9. After several minutes, she returns and continues to exchange words with Plaintiff.

In the aftermath of the June 13 Incident, Plaintiff quickly realized that he no longer had reason to remain silent about the affair. He promptly disclosed the affair to the PREA hotline. *Id.* ¶¶ 27-28.

### III.   <u>GVRC – Captain Palmer-Campbell</u>

Eventually, Plaintiff was transferred to George R. Vierno Center (GRVC), at which point his relationships with Brumfield and Simmons ended. The sexual abuse, however, resumed anew. Plaintiff soon met Palmer-Campbell who began sharing information about her personal life. *Id.* ¶ 31.

In exchange for his sexual acts, Plaintiff was rewarded with special privileges like a cell phone and tablet. *Id.* ¶ 32. He regularly accessed the web and social media, making videos on Facebook. *See, e.g.,* Ex. 8. And more: He did not need to remain confined in his cell all day,

even though he was supposed to be on a 23-hour lockdown. For months, he enjoyed those privileges until sometime in August 2022 when he could no longer willingly participate. *Id.* ¶ 35.

### IV.    **PREA Complaints and Subsequent DOC Investigations**

*The Brumfield and Simmons Investigations.* The June 13 Incident investigation consisted of an interview with Kwaine that day, but there was no other inmate or CO witnesses. *Id.* ¶ 38.The investigation also relied heavily on recordings of Plaintiff's telephone conversations with friends and family, in which he describes his hope to prevail or win some type of settlement. *See generally* Ex. 4. desire to sue Brumfield and hope to get some money. Thereafter, Plaintiff did not hear any further developments or news about his complaint. *Id.* ¶ 40. In December 2021, Plaintiff telephoned PREA again in an attempt to follow up about his original complaint. *Id.* ¶ 41.

*The Palmer-Campbell Investigation.* A few weeks later, Plaintiff reported sexual harassment and abuse by Defendant Palmer-Campbell. *Id.* ¶ 43. The investigation relied mostly on security camera footage. *Id.* ¶ 44. Investigators did not interview Palmer-Campbell who, around that same time, went on sick leave without any end. *Id.* ¶¶ 45-46.

### V.    **Procedural History**

On February 22, 2022, Plaintiff filed his initial complaint, raising various constitutional violations under § 1983 for sexual abuse and harassment. ECF No. 1. He amended on April 8, 2022 (ECF No. 23), and again on October 21, 2022 (ECF No. 45) ("SAC").

In March 2022, Defendants requested several sixty-day extensions—in March (ECF No. 20), May (ECF No. 33), and July (ECF No. 35)—to complete various investigations into Plaintiff's allegations, which the Court granted. In November and December 2022, the City and other defendants filed their answers shortly afterwards. *See* ECF No. 49 & 50. For the most part,

3

the answers denied the allegations and asserted several affirmative defenses.  On February 21,

2023, Plaintiff's then-counsel obtained the Court's permission to withdraw from the case;

thereafter, Plaintiff proceeded *pro se* for the rest of his case.

Following the end of discovery, on December 5, 2023, the City filed the present motion

for summary judgment. ECF Nos. 83–87. A few weeks later, on December 19, 2023, the Court

granted Plaintiff's requests for *pro bono* counsel to respond to the motion, as well as to proceed

in forma pauperis. ECF No. 92. On March 20, 2024, Plaintiff's *pro bono* counsel entered a

limited appearance. ECF No. 105.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where the movant "shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden "to demonstrate that no

genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd.*

*P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) . "If the movant meets its burden, 'the nonmoving

party must come forward with admissible evidence sufficient to raise a genuine issue of fact for

trial in order to avoid summary judgment.'" *House v. City of New York,* 2020 WL 6891830, at

*5–6 (S.D.N.Y. Nov. 24, 2020) (quoting *Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d

Cir. 2008)); *see also* Fed. R. Civ. P. 56(c)(1)(A).

Courts must construe the evidence in the light most favorable to the non-moving party

and draw all reasonable inferences in its favor. *See, e.g., Holcomb v. Iona Coll*., 521 F.3d 130,

132 (2d Cir. 2008); *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). "In applying this

standard, the court should not weigh evidence or assess the credibility of witnesses. These

determinations are within the sole province of the jury." *Frost v. New York City Police Dep't*,

980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). Importantly, "[s]ummary judgment dismissing a claim is inappropriate when the admissible materials in the record make it arguable that the claim has merit." *Kee v. City of New York*, 12 F. 4th 150, 158 (2d Cir. 2021) (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020) (internal quotation marks omitted)).

## ARGUMENT

### I.   § 1983 Actions

To prevail on a §1983 claim, "a plaintiff must show that [1] there has been a denial of a right, privilege, or immunity secured by the Constitution or laws of the United States and that [2] the deprivation of such right occurred under color of state law." *Portillo v. Webb*, 2022 WL 2337380, at \*5 (S.D.N.Y. June 29, 2022) (citations omitted), R&R adopted, No, 2022 WL 16736980 (S.D.N.Y. Nov. 7, 2022).

### II.   The City Is Not Entitled To Summary Judgment Based On Credibility Grounds (The *Jeffreys* Exception).

The City relies principally on *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (the *Jeffreys* exception) for the proposition that Plaintiff is "incredible as a matter of law," Mot. at 4. In their view, there are "material contradictions" in Plaintiff's statements to DOC investigators and his deposition. *Id*. at 5. So much so, the City concludes that Plaintiff is "incredible as a matter of law" and the Court should discard substantial parts of his account. *Id*. 4-6.

The *Jeffreys* exception does not apply. While courts, as a general rule, should not consider credibility on summary judgment, *Jeffreys* "recognized a narrow exception 'in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete.'" *Frost,* 980 F.3d at 245 (quoting *Jeffreys*, 426 F.3d at 554).

"The *Jeffreys* plaintiff sued several police officers under § 1983, alleging that they had assaulted him and thrown him out of a third-story window. Shortly after… and long before he filed [suit], the plaintiff had told a number of witnesses that he had either jumped or fallen out of the window, and that he had not even seen any police officers until after he hit the ground." *Moore v. Casselberry*, 584 F. Supp. 2d 580, 583 (W.D.N.Y. 2008) (emphasis added).

Kwaine's discrepancies, however, have not changed over time to necessarily bolster his case, or to put him in a better position for litigation. There is no ulterior motive. Nor are his inconsistencies that significant. To be sure, is not a case where the plaintiff relies exclusively only on his testimony to prevail. For one thing, there are other pieces of evidence that support Kwaine's version of events. *See* Pl. 56.1 ¶ 12. Taken together, where the parties both present competing versions of events, "a jury must evaluate what actually happened, not the Court on a motion for summary judgment." *Dinkins v. Gustave*, No. 19-CV-2336 (JPC) (KHP), 2022 WL 1051110, at *7 (S.D.N.Y. Jan. 12, 2022) (citing *Crawford*, 796 F.3d at 257); *see Falls v. Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at *10 (S.D.N.Y. Mar. 26, 2021) ("[w]here the evidence presents 'a question of 'he said, she said,' the court cannot take a side") (cleaned up) (quoting, *inter alia*, *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010).

In all events, *Jeffreys* is not the be-all, end-all. Where there is a "plausible explanation" for a plaintiff's discrepancies, the *Jeffreys* exception loses force. *Jeffreys*, 426 F.3d at 555 n.2; *see Frost*, 980 F.3d at 246-47 (explaining exception); *e.g., Campbell v. Trew*, No. 18-CV-5507 (NSR), 2021 WL 3292226, at *7 (S.D.N.Y. July 30, 2021) (*Jeffreys* exception did not apply). In this case, there are several plausible explanations that could contextualize or better explain Plaintiff's inconsistencies:

6

1. <u>Fear of retaliation</u>. Plaintiff has persistently stressed that he is afraid of retaliation, and he's been subjected to it. *Cf.* Elana M. Stern, *Accessing accountability: Exploring criminal prosecution of male guards for sexually assaulting female inmates in US prisons*, University of Pennsylvania Law Review (2019): 733-773. ("There is a huge disincentive to report abuse by a prison staff member "because [inmates] fear staff reprisal, worry that others will accuse them of lying, or want to avoid being labeled a snitch").

2. <u>Issues of masculinity and manhood</u>. Plaintiff has also explained that, whenever he's shared any details related to the abuse, he's been encouraged. *See* 50H Tr. 24:19 ("They told me I was a lucky man"); *cf.* Brenda Smith, Uncomfortable Places at 1715 ("Why would these boys report they were abused by female staff? They should be happy to have sex."); Lauren A. Teichner, *Unusual Suspects: Recognizing and Responding to Female Staff Perpetrators of Sexual Misconduct in U.S. Prisons*, 14 Mich. J. Gender & L. 259, 260 (2008) ("The code of silence can prove even more oppressive to male inmates who have been victimized by female staff due to the pressures of hegemonic masculinity…").

3. It is common for victims of sexual abuse to be hesitant or withhold information from authorities. Shana L Maier. *Rape*, *Victims, and Investigations Experiences and Perceptions of Law Enforcement Officers Responding to Reported Rapes*, 2014…. p. 85 ("Even some victims who do cooperate with authorities are not completely open with information. They are reluctant to provide details, and they respond to detectives' questions with one-word answers. Victims may also embellish the story, or leave out parts of the incident and what came before it"); *id.* at 97 ("[v]ictims could recant their stories after facing blame, disbelief, or further danger from anyone").

Beyond all of that, Plaintiff has long maintained that security cameras will prove his account, so there's no need to even take his word to see if he's telling the truth. *See, e.g.,* Pl. Tr. 82:12-13 ("I'm sure they got cameras in the clinic").

### III.   <u>Sexual Abuse Claims</u>

#### A.  Analytical Framework

To state a claim for sexual abuse, a plaintiff must prove both subjective and objective elements: (1) "that the defendant acted with a subjectively 'sufficiently culpable state of mind,'" and (2) "that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). "However, the Supreme Court has held that, for claims involving pretrial detainees in particular, "the

appropriate standard is solely an objective one." *Cook v. Dewitt*, No. 19 CIV. 2780 (NSR), 2022 WL 580774, at *3 (S.D.N.Y. Feb. 25, 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015)). Meaning, the detainee "need not demonstrate that [the] officer was subjectively aware that his use of force was unreasonable." *Id.*; *see Seweid v. Cnty. of Nassau*, 2024 WL 693981, at *14 (E.D.N.Y. Feb. 20, 2024) (citation omitted).[2]

Even assuming *arguendo* there is a *mens rea* requirement for a Fourteenth Amendment claim, that does not necessarily alter the analysis in this context. More specifically, "there is no penological purpose" or "evidence [] of a valid penological purpose for grabbing an inmate's naked penis." *Crawford*, 796 F.3d at 257–58 (where the defendant "fondl[ed] and squeeze[d] [the plaintiff's] penis in order to make sure [he] did not have an erection," because "[t]here is no penological justification for checking to see if an inmate has an erection"); *see also DeJesus v. Malloy*, 531 F. Supp. 3d 650, 654 (W.D.N.Y. 2021) (finding sexual harassment sufficiently serious), *reconsideration denied*, 582 F. Supp. 3d 82 (W.D.N.Y. 2022).

All told, in determining whether a constitutional violation occurred, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate.)… " *Crawford*, 796 F.3d at 257-58 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

---

[2] In the Second Circuit, there has been some confusion about "[w]hether the standard for evaluating a claim of sexual abuse by a pretrial detainee is the same as for that of a convicted inmate, that is, whether the standard under the Fourteenth Amendment has both objective and subjective mens rea elements, is unclear." *Dinkins v. Gustave*, 2022 WL 1051110, at *7 (S.D.N.Y. Jan. 12, 2022) (citing cases), 2022 WL 884969 (S.D.N.Y. Mar. 25, 2022); *see Hosannah v. Officer Ameed Saeed*, No., 2022 WL 21783687, at *14 (E.D.N.Y. Dec. 28, 2022) (collecting cases); *Sanchez*, 662 F. Supp. 3d at 405 (same).

### B.  The Sexual Abuse and Harassment Allegations

Seizing on inconsistencies in Plaintiff's account, the City concludes they "all materially contradict each other" with respect to Plaintiff's allegations against. Mot. at 8; *see id.* ("Plaintiff's account of the alleged sexual assault by defendant Palmer-Campbell is directly refuted by video surveillance").

Admittedly, Plaintiff has trouble with some of the specifics, but that does not have any bearing on whether Plaintiff is being truthful. As explained, Plaintiff has a long, storied relationship with Rikers and, more generally, law enforcement. Moreover, much of this can be traumatic and stressful for Plaintiff who has been a victim of sexual abuse from a young age.[3] Plus, Plaintiff has mostly proceeded *pro se* in this action; he does not have counsel to assist him with his case. *Cf. Falls*, 2021 WL 1164185 at *10 (collecting cases for proposition that pro se litigants should be afforded "special solitude").

Plaintiff has consistently maintained that he engaged in sexual relations with each of the CO's named above. For example, one day after the June 13 Incident, Plaintiff reported his sexual relationship with Brumfield that had been going on for months. In his 311 call, he similarly confirmed the same. For whatever it's worth, the City protests that there wasn't "any mention of a sexual assault" in Plaintiff's account. Mot. at 9. Yet Plaintiff's characterizations of his sexual history with the C.O.s has no bearing on the matter.[4]

---

[3] *Compare* Pl. Dep. 8:22-23 (Q: "How many children do you have?" A: "**Four**"), *with* 50H Tr. 9:8-11 (Q: "How many children [do you have]?" A: "**Three**") (emphasis added).

[4] That's especially so because, "as a matter of New York state law, any sexual contact between a guard and a prisoner—whether "assaultive" or "non-assaultive"—"is deemed non-consensual…" *Cash v. Cty. of Erie*, 654 F.3d 324, 337 (2d Cir. 2011) (citations omitted); *see M.T. v. City of New York,* 325 F. Supp. 3d 487, 491–92 (S.D.N.Y. 2018) (same); N.Y. Penal Law §§ 130.05(3)(e)-(f), .25(1), .60(1).

In giving Plaintiff preferential treatment and other rewards for sexual favors, the various CO Defendants were "grooming [him]... into believing that such contact is consistent with a normal romantic relationship." *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *2 (S.D.N.Y. Sept. 28, 2021) (citations and internal quotation marks omitted); *see* Mot. at 10 ("Brumfield would bring plaintiff gifts of cigarettes, weed, and food in-between encounters for months").

### IV.    **Failure to Intervene/Protect Claims**

#### A. **Analytical Framework**

 "Just as prison officials may be liable for failing to protect an inmate from an assault of which they had knowledge or should have had knowledge, they also may be liable for failing to intervene in an assault." *Seward v. Antonini*, No. 20-CV-9251 (KMK), 2023 WL 6387180, at *18 (S.D.N.Y. Sept. 29, 2023) (citation omitted). "The claims are distinct, even though both claims require a showing that an officer "acted with "deliberate indifference to a substantial risk of serious harm" to an inmate or detainee." *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 405 (E.D.N.Y. 2023).

#### B. **Failure-to-Protect/Intervene Claims**

The City essentially argues that Plaintiff cannot demonstrate that any Defendants had knowledge of the sexual harassment. In the City's view, Plaintiff "cannot demonstrate the defendants... acted intentionally to impose the alleged conditions or recklessly failed to mitigate the risk that the conditions posed on him even though the defendant- official knew, or should have known..." Mot. at 16. The City additionally argues that Plaintiff's claims fail and offers three points in support:

> 1. First, plaintiff's alleged assault by defendant Palmer-Campbell occurred at GRVC, and defendants Francis, Davis, and Montague were stationed at VCBC. (See SAC at ¶ 27-28, 30, 35).

10

2. Second, plaintiff testified that no one was present in the x-ray room during his alleged sexual assault by defendant Brumfield. (See Pl. Dep at 14:5-25, Exhibit A).

3. Third, there is no evidence in the record that defendants Francis, Davis, or Montague were present when plaintiff was allegedly sexually assaulted on the elevator by defendant Simmons.

Mot. at 14-15.

All three seemingly depend on a CO's physical presence. But a CO need not be physically present. So long as an officer "observed or had reason to know" or, say, "had an extended opportunity" to stop the abuse, a plaintiff can prevail. *Sanchez*, 662 F. Supp. 3d at ___ (quoting, *inter alia*, *Blake v. Sexton*, No. 12-CV-7245 (ER), 2016 WL 1241525, at *4 (S.D.N.Y. Mar. 24, 2016)). Regardless, there are multiple examples to support Plaintiff's attempts to report the abuse to DOC. *See* Pl. Tr. 84:9 ("I have spoken to numerous investigators…"). In fact, Plaintiff actually had confided about Brumfield to Captain Montague contrary to Defendants' telling.

Not to mention, there are numerous outstanding questions as to the extent and degree to which Defendants had knowledge of the sexual abuse. It is far from clear what, if any, complaints have been made against the CO defendants Consider that a history of complaints is instructive in this context. *Doe v. City of New York*, No. 15-CV-0117(AJN), 2018 WL 6095847, at *2 (S.D.N.Y. Nov. 21, 2018) (past complaints serve to "put the City on notice even if the complaints are ultimately not meritorious"). At the very least, Plaintiff should be afforded an opportunity to adequately conduct discovery and present a robust defense like any other litigant.

///

11

## V.    Remaining Arguments

### A.  Exhaustion

The City asserts that Plaintiff only filed a notice of claim for Brumfield and Simmons,

although he failed to file a notice against Palmer Campbell. Mot. at 21-22. In so doing, Plaintiff

is barred from asserting claims against Palmer-Campbell.

For several reasons, the argument fails. First, there are multiple exceptions that may

apply. *See, e.g., Williams v. Correction Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016)

(PLRA's exhaustion exceptions) (citing *Ross v. Blake*, 578 U.S. 632, 643 (2016)). Plaintiff may

overcome exhaustion barriers based on his claims of retaliation or an ineffective grievance

system, among other exceptions. *Hosannah*, 2022 WL 21783687, at *10 n.11 ("First

Amendment deprivation presents a cognizable injury standing alone and the PLRA 'does not bar

a separate award of damages to compensate the plaintiff for the First Amendment violation in

and of itself'") (citation omitted); *see also M.T.,* 325 F. Supp. 3d at 500 n.16 (rejecting similar

argument since inmate's notice already contained the gist of his complaint).

### B.  State-Law Claims.

Plaintiff asserts various state-law claims mostly related to negligence. The City argues

that the Court should dismiss those claims, *see* Mot. at 17-20, but there is no need to reach that

issue, especially if the Court denies the City's motion for summary judgment on Plaintiff's

federal claims. However, to ensure that Plaintiff's state-law claims are not deemed waived or

abandoned, Plaintiff respectfully requests an opportunity to submit additional briefing or a sur-

reply, especially if he continues as a *pro se* litigant. *House* 2020 WL 6891830, n.8.

More broadly, the state-law claims, including negligent hiring and general negligence,

turn on whether the State knew or should have known about the misconduct. *See House,* 2020

WL 6891830 at *20-22. Plaintiff, however, cannot adequately speak to the City's knowledge without further discovery.

### C.  Other Theories of Liability

*Qualified immunity.* The City does not make any serious qualified-immunity argument in its motion, although it was raised as an affirmative defense in their answer. However, the Court need not reach that question at this juncture. *See Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (qualified immunity may be waived where "defendants failed to move for summary judgment… even if, also as here, [they] asserted the defense in their answer").

*Municipal liability*. Plaintiff brings suit against the City of New York, a municipality. "To prevail on a *Monell* claim for failure to supervise, Plaintiff "must establish [the City's] deliberate indifference by showing that 'the need for more or better supervision to protect against constitutional violations was obvious,' but that [the City] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." *Velez v. City of N.Y.*, 2019 WL 3495642 at *6 (S.D.N.Y. Aug. 1, 2019) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)). As with Plaintiff's state law claims, additional discovery is needed for Plaintiff to meaningfully make an argument in this context.

### <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests the Court deny the City's motion for summary judgment. In the alternative, Plaintiff requests the Court delay ruling on the motion for summary judgment to provide him an opportunity to complete discovery.

April 5, 2024
New York, NY

Respectfully,

_____
Sami Elamad