UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLAINTIFF THOMPSON,<br><br>*Plaintiff*,<br><br>vs.<br><br>CITY OF NEW YORK, et al.<br><br>*Defendants*. | Action No. 1:22-cv-01458-JPO-KHP |

**PLAINTIFF'S RESPONSE AND COUNTERSTATEMENT TO
DEFENDANTS' LOCAL RULE 56.1 STATEMENT**

Pursuant to Local Rule 56.1 of the Civil Rules of this Court, Plaintiff Thompson ("Plaintiff" or "Thompson") respectfully submits the following in response to Defendants' Statement of Material Facts (ECF No. 86), in connection with their pending for motion for summary judgment, dated December 5, 2023 (ECF Nos. 83–87).[1]

## PLAINTIFF'S RESPONSE

1. Plaintiff never tested positive for chlamydia while in DOC custody.

<u>Plaintiff's Response.</u> Disputed as incomplete and overly broad. (*See* ¶¶ 11-14 below.)

2. Plaintiff filed a Notice of Claim on July 9, 2021, under Comptroller No. 202100085768, only alleging the incidents involving defendants Brumfield and Simmons, and not defendant Palmer-Campbell.

<u>Plaintiff's Response.</u> Admits for purposes of this motion only.

## PLAINTIFF'S COUNTERSTATEMENT

**Background**

3. Since the early 1990s, Plaintiff has been in and out of Rikers Island around thirty different instances, with his first arrest in or around January 1993.

4. Defendants Brumfield, Simmons, Francis, Davis, and Montague were assigned to VCBC during the relevant period. ECF No. 49 ¶¶ 26-28 & 30; ECF No. 50 ¶¶ 26-28 & 30.

5. Defendant Palmer-Campbell was assigned to GRVC during the relevant period. ECF No. 49 ¶ 29; No. 50 ¶ 30.

6. From at least from November 2019 until November 2022, Plaintiff was supposed to be on a 23-hour, around-the-clock lockdown wherein he could only communicate with his pre-

---

[1] Any paragraph of the Statement, or a portion thereof, that Plaintiff does not dispute, does not constitute an admission that the Statement is material, or that all or any portion of the cited evidence in support of the Statement constitutes evidence admissible under the Federal Rules of Evidence.

approved counsel. *See* Ex. 10; *accord Thompson v. Renee*, No. 21-CV-10371 (VEC), 2023 WL 2575222, at *1 (S.D.N.Y. Mar. 17, 2023) ("Thompson was placed under court-ordered lockdown while detained at Rikers Island"); *Thompson v. Quilty*, No. 22-CV-7222 (LTS), 2023 WL 2974086, at *4 (S.D.N.Y. Apr. 12, 2023) (lockdown order).

**Plaintiff's Medical History**

7. From a young age, Plaintiff was a victim of sexual abuse. Pl. Tr. 21:2-6.

8. Over the years, Plaintiff has suffered multiple injuries in DOI custody. Pl. Tr. 48:2-4 & 48:15-17.

9. Following one 2010 incident, Plaintiff needed a titanium plate in his eye after officers crushed his left orbital floor. Pl. Tr. 94:21-24.

10. Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) following his extended history with Rikers and, more generally, New York City law enforcement. Pl. Tr. 93:10.

11. Plaintiff previously contracted chlamydia in DOI custody—at least once in 2015. Ex. 3 at 2.

12. More recently, in 2021, Plaintiff was diagnosed and treated for a urinary tract infection (UTI) while in DOI custody. Pl. Tr. 64:24-25 & 88:22-24; Ex. 3 at 3-4.

13. Plaintiff received five days of antibiotics to treat his UTI…Pl. Tr. 64:25; 50H Tr. 43:21-23; Ex. 3 at 4.

14. He also has been suffering from priapism—a disorder in which the penis maintains a prolonged, rigid erection in the absence of appropriate stimulation—while in DOI custody during the relevant time period. Ex. 3 at 5; *see* Silberman M, Stormont G, Leslie SW, et

al. Priapism. [Updated 2023 May 30]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2024 Jan-. Available from: https://www.ncbi.nlm.nih.gov/books/NBK459178/.

**Plaintiff Performs Sexual Favors for CO's**

**VCBC (Brumfield and Simmons)**

15. Shortly after Plaintiff arrived to VCBC in September 2020, he was introduced to Brumfield. 50H Tr. 21:14-20 & 22:12-19.

16. Brumfield sought to develop a personal relationship with Plaintiff. 50H Tr. 22:12-19 & 26:2-18; Pl. Tr. 49:6-8; SAC ¶ 33 & 38; DOC interview.

17. In the ensuing months, Brumfield and Plaintiff engaged in various sexual acts. *See* SAC ¶¶ 38 & 44–47; 50H Tr. 25:14-16 (oral sex in x-ray room), 27:22-25 (penetrative sex), 32:11-19.

18. Around the same time, in January 2021, Plaintiff met Defendant Simmons, who similarly sought to develop a personal relationship with Plaintiff. 50H Tr. 20:9-19, 37:18-19; SAC ¶ 40; Pl. Tr. 56:13-20.

19. Simmons and Plaintiff also engaged in various sexual acts. 50H Tr. 27:25, 38:11-14, 39:9-12, 41:25.

20. In exchange for sexual favors, both Brumfield and Simmons rewarded Plaintiff with gifts, food, and illicit drugs, food. Pl. Tr. 49:20-22; 50H Tr. 22:16-19, 23:2-4, 31:18.

21. On the morning of June 13, 2021, Plaintiff and Brumfield had a heated exchange in the dayroom. 50H Tr. 44: 6-14; *see* SAC ¶¶ 44–47; ECF No. 85-7 (311 call); Pl. Tr. 31:3-14.

22. Plaintiff had attributed the incident to Brumfield's discovery of his relationship with Simmons. 50H Tr. 44:7-18.

23. Brumfield made an entry in the log shortly after she entered the dayroom. Ex. 5.

24. More precisely, Brumfield wrote that Plaintiff "refused" to go to the clinic that morning because he is "stating that he is not going unless C.O. Simmons is escorting him…" in the logbook. *See* Pl. Tr. 31:6-8; Ex. 5.

25. That morning, an altercation erupted between C.O. Brumfield and Plaintiff. Pl. Tr. 31:10-14 ("[Brumfield] said I better not be giving her dick to nobody in front of the whole housing unit"); SAC ¶ 44.

26. At least ten inmates and one C.O. witnessed the altercation in its entirety. Pl. Tr. 32:18-19, 35:17-20; 50H Tr. 44:14-17.

27. The next day, Plaintiff telephoned the PREA hotline to report the incident in which he reported the sexual abuse against Brumfield. *See* Pl. Tr. 31:15-16; ECF No. 85-7.

28. Following the June 13 Incident, Plaintiff went on to disclose his inappropriate relationship with Brumfield to other Rikers staff and CO's. *See* Pl. Tr. 36:8-12; ECF No. 85-5; SAC ¶¶ 46 & 48.

29. Plaintiff also confided in Captain Montague about his sexual relations with Brumfield. Pl. Tr. 23:15-16 & 44:3-5; SAC ¶ 43.

**GRVC (Palmer-Campbell)**

30. Plaintiff then transferred to GRVC in October 2021.

31. There, Plaintiff was introduced to Defendant Palmer-Campbell who began making sexual advances and remarks. 50H Tr. 50:22-24 & 52:22-24; Pl. Tr. 77:20-25; SAC ¶¶ 35 & 50.

32. In exchange for sexual favors for Captain Palmer, as relevant here, Plaintiff received special treatment from the officers. Pl. Tr. 52:10-20, 67:6-19, 77:7-9, 121:3-11.

33. To name a few things, Plaintiff received a cell phone and tablet as gifts. Pl. Tr. 52:14-16.

34. Plaintiff began making posts online, including posting live videos on Facebook showing his surroundings. See Ex. 8.

35. After several months, Plaintiff could no longer willingly participate in such sexual acts, and in August 2022, he refused to participate. *See* Pl. Tr. 67:22-24 ("I backed out the deal, and… immediately, retaliation happened").

36. On December 20, 2022, Plaintiff disclosed his relationship with Captain Palmer-Campbell to DOC. Pl. Tr. 121:1-12; Ex. 7.

37. Further, Plaintiff disclosed the allegations related to Palmer-Campbell to other Rikers staff and officers. *See, e.g.,* SAC ¶ 43; 50H Tr. 40:16-24.

**The Subsequent Investigations**

**The Brumfield and Simmons Investigations**

38. The City did not interview or obtain statements from any inmate. Ex. 4 at 5 (witness statements).

39. The City did not interview any inmate or CO, including Kingsley, who had been in the dayroom all morning and observed everything. Ex. 4 at 5.

40. Plaintiff did not hear any further news or developments from the City after his initial interview with DOC in June 2021, which prompted his second complaint. *See* Ex. 5.

41. On December 3, 2021, Plaintiff telephoned PREA as a follow up about his original complaint.

42. In April 2022, DOC collected a handwritten statement from Brumfield for the investigation, in which she writes "I proceeded to call him a loser, a clown, and a dirty creep and everyone knows it." Ex. 4 at 12.

**The Palmer-Campbell Investigation**

43. On December 20, 2021, Plaintiff filed a complaint related to Captain Palmer-Campbell for sexual harassment and other inappropriate, physical behavior. 50H Tr. 52:22-24.

44. Security camera footage from that December 20 evening does not run continuously; there were multiple gaps in the coverage. *See, e.g.,* Ex. 11.

45. DOC did not interview Palmer-Campbell for their investigation. See Ex. 7 at 38-39; *see also* Ex. 7.

46. DOC could not obtain any written statement from Palmer-Campbell, because Palmer-Campbell went on sick leave with no return date. Ex. 7 at 38-39.

Dated: New York, NY
April 5, 2024

Respectfully,

_____
Sami Elamad

*Pro Bono Counsel for Plaintiff*