# *The Atlantic Foundation*

May 28, 2024

**BY ECF**

The Honorable Katherine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Thompson v. City of New York, et al.*
               No. 1:22-cv-1458 (JPO) (KHP)

Dear Judge Parker:

      Plaintiff Kwaine Thompson ("Plaintiff" or "Thompson"), by and through his *pro bono* counsel, respectfully submits the following sur-reply in connection with the pending motion for summary judgment filed by defendants the City of New York and various Rikers correctional officers (collectively, the City or "Defendants").

      For background, Plaintiff previously requested permission to address new arguments that Defendants made in their reply brief related to abandonment and waiver. ECF No. 123. The Court granted the request and directed Plaintiff to file a sur-reply not to exceed five pages.[1] ECF No. 124. For the reasons explained below, Defendants' arguments on reply are without merit.

      On another note, Mr. Thompson personally requested that I advise the Court of the worsening conditions at Collins Correctional Facility, where he currently remains, as well as to relay his discovery-related requests, which is available following this sur-reply below.

* * *

      As initially explained in his opposition, Plaintiff requires further discovery in order to adequately oppose the City's summary judgment motion. ECF No. 111 ("Opp.").

      On reply, Defendants recast that explanation as legally deficient and, instead, urge the Court to deem Plaintiff as having abandoned them. ECF No. 120 ("Reply"). The City urges the Court to deem Plaintiff's claims abandoned on the view that he failed to provide a meaningful

---

[1] Counsel recognizes that this filing comes belatedly and sincerely apologizes to the Court and parties for any delay.

response. *See, e.g.,* Reply at 1, 3, 5, 8. The City goes on to conclude that, either way, "further discovery would not affect the arguments." Reply at 2.

To begin, Plaintiff provided a sufficient response: He needs additional discovery to present an adequate opposition because facts are unavailable to him consistent with Fed. R. Civ. P. 56(d). *See* ECF No. 119 ("56(d) Decl."). That does not mean Plaintiff failed to oppose Defendants' motion. *See Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 294 (S.D.N.Y. 1996) (explaining that a 56(d) request "protects a party" opposing a summary judgment). More broadly, Rule 56(d) "should be applied with a spirit of liberality," although it is not meant to "aid parties who have been lazy or dilatory." *Id.* (quoting Wright & Miller, Federal Practice and Procedure: Civil 2d § 2740, at 529–30 (2d ed. 1983)). Thompson has been neither lazy nor dilatory, as illustrated by his frequent letters and filings with the Court, among other things, throughout these proceedings.

Regardless, in responding to the City's summary judgment motion, Plaintiff put forth his own version of events about the underlying allegations and sexual abuse (Opp. at 1-3), which the Court is normally bound to accept at this stage. Put differently, "[that] usually means adopting… the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150-51 (2000); *Viola v. Philips Med. Sys. of N. Am.,* 42 F.3d 712, 716 (2d Cir. 1994). Sure enough, Plaintiff could have submitted an affidavit, although it probably would not help resolve the parties' factual disputes.

Tellingly, Defendants did not offer any affidavits—or admissible evidence—based on personal knowledge to effectively counter Plaintiff's version of events. Had the City submitted, say, affidavits from the CO Defendants (or others with first-hand knowledge), it might have met their initial burden.[2] Critically, that burden doesn't change regardless of whether the non-movant, or Plaintiff here, files an opposition to summary judgment. That's because, as movant, the City must show it is entitled to summary judgment regardless of whether Plaintiff fails to respond to the motion. *See, e.g., Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 160 (1970) ("summary judgment must be denied even if no opposing evidentiary matter is presented"); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 115 (2d Cir. 2017); *Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244-45 (2d Cir. 2004).

Additionally, it is unclear where the City finds support for the argument that Plaintiff's claims should be limited to three incidents. On reply, Defendants specifically ask the Court to adopt their rule-of-three theory since Plaintiff "provided no meaningful opposition" and abandoned any other alleged incidents. Reply at 1. That goes far beyond the pale. None of Defendants' cited cases (Reply at 1) suggest that a party moving for summary judgment can be

---

[2] In the context of Rule 56.1 Statements, a party must point to admissible evidence if it offers a denial as a response, or otherwise it risks the Court deeming that item admitted. *See, e.g., Moore v. Cohen*, 548 F. Supp. 3d 330, 334 n.1 (S.D.N.Y. 2021) (citing cases), aff'd sub nom., 2022 WL 2525722 (2d Cir. July 7, 2022); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (collecting cases).

Here, the City's responses to Plaintiff's Rule 56.1 Counterstatement mostly comprise legal argument and blanket denials. *See, e.g.,* ECF No. 121 [Def. 56.1] ¶¶ 17-20. That is woefully insufficient.

selective in what it chooses to accept or reject from Plaintiff's testimony. Or that a moving party may settle on three as their magic number. It begs the question: Why three? Why not four or five?

    For whatever it's worth, Plaintiff's ability to engage in discovery has been stymied by the fact that he has remained incarcerated over the course of these proceedings. It is unclear how Plaintiff could conduct a deposition with limited capabilities, especially considering that he could not even review security-camera footage on multiple occasions. *See* 56(d) Decl. ¶ 36 (citing ECF Nos. 91, 100). Defendants' theory is also belied by the longstanding policy of allowing pro se litigants reasonable allowances to protect them from the "inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild For The Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (citation omitted; internal quotation marks omitted).

    In sum, Defendants' attempt to recast Plaintiff's opposition lacks any serious merit and should be rejected as improper. *See, e.g., Manon v. Pons*, 131 F. Supp. 3d 219, 238 (S.D.N.Y. 2015) (new arguments made on reply are waived by courts in this Circuit).

    *   *   *

    Last but not least, Mr. Thompson requested that I advise the Court of the violence and inhumane conditions that he has experienced at Collins Correctional Facility, which remain ongoing as of May 23, 2024. Mr. Thompson expressed that these conditions are worsening, in part, because of retaliation efforts based on his ongoing litigation with the City of New York.

    He also provided a set of outstanding discovery-related items (enclosed herewith), which Mr. Thompson would like the Court to take under consideration.

    *   *   *

Thank you very much. I sincerely appreciate the Court's attention to this matter.

Very truly yours,

*[signature]*

Sami Elamad

Enclosures

# Discovery Demands

① I will like to pull all footage from me being housed at G.R.V.C / West Facility / C-95 Hart's island and video from all intakes and video from Visiting Room Floors.

② Any all investigations into Misconduct / disciplinary proceedings / Prea allegations against all defendants and How many U.O.F in Carreer.

③ All Medical Records from G.R.V.C West Facility / Hart's island C-95 during the time Period I entered G.R.V.C

④ All 311 calls from the time period until I Left Riker's to head upstate and been Sentenced to 6yrs.

⑤ All Grievances I submitted since entering G.R.V.C until shipped upstate.

⑥ All medical Records from V.C.B.C, M.D.C

⑦ All log books from Housing units, Medical dept, visiting log books, And A copy of my visitor list.

⑧ Copies of all disciplinary Infractions / tickets since entering G.R.V.C until being shipped upstate.

⑨ All Medical Trips to outside hospitals since being in V.C.B.C and G.R.V.C & A.R.D.C.

⑩ All Medical Records from Elmira Reception to Mid-State correctional and Fishkill correctional to syracuse Hospital in syracuse NY Jan/2024.

⑪ All calls made by me using another inmate P.IN #'s and where was these inmates located when I was using their P.IN # in the Jail.

(12) The Law Library tablet that was used to get on Facebook and other Social Media Websites. (13) All the Reasons and Records of why I was denied visit in G.R.V.C and why was I penalized for not getting visits (14) All Records of why I was denied Contact visits at West facility, when I was not ordered by the courts to have my visit limited to No-contact, when indeed West facility do have a visiting floor that allows contact with family & love ones. (15) The Directive for Recreation for court-ordered inmates and why I was shackled head to toe a Rec time periods. (16) Directive on why inmates can't use cane when in full body Restraints even though inmate has permit prescribed by doctor for use of cane. All Medical permits for all Medical devices since being on Riker's Island / Elmira / Mid-state corr and Fishkill and Collins corr facility. All dispositions of disciplinary proceedings since being upstate NY, Mid-state corr. facility. All Reason why I was denied Packages at upstate corr facilities and whom was the officer who sent packages back. (17) All Judge court-orders (18) All CMC designation forms from Riker's Island submitted on me.

(19) All Heat Sensitive documents issued to me by the dept of corrections, and why I wasn't transferred to Heat Sensitive housing when recommended by Doctor's (20) All Transit records for Riker's island to see when Officer Cribbs crashed the bus when I went to court in Manhattan and left the scene of the accident (21) All Records for why I did not Recieved law library at West Facility or why I wasn't able to drop my grievance in grievance box at West Facility because West Facility don't HAVE a grievance procedure instituted when I arrived. (22) All Records showing why there was NO shower curtain install at west facility to block staff or anyone looking at me while showering walking by and the Directive on shower curtains (23) The Directive on Reasonable Accomodation for Rikers island when it pertains to deaf/Hard of Hearing inmates, And Records on why I wasn't granted learning Material such as sign language/Reading lips when I Requested these learning tools for the deaf. (24) Directive on cell-study and General library while in the box 23/hours a day. (25) And why not once I was granted book to Read while in the box at Riker's.

(4)

(31) All Directives on Prea-follow-up investigators to ensure inmates who allege Sexual/Harrasment don't be Retaliated against. (32) All Documents Kevin Smith I.R.C, G.R.V.C director file on my behalf from my time at G.R.V.C (33) All Directives on using the Deaf/Hard of Hearing Tty phone for Riker's island. (34) All Directives on inmates being seen by Medical specialist such as urologist for priapism. (35) All work orders from Housing units I resided in since entering G.R.V.C up til now. (36) All Directives on Hearing/disciplinary proceedings on Riker's island. (37) All Directives on the Conduct of an employee/officer on Riker's island. (38) Directives on A Higher level of Medical Care when needed by Riker's island. (39) All Directives on the H.A.L.T Act policy instituted by Governor Kathy Hochul for the State of NY including Riker's island (40) All Directives that prevented court-ordered inmates from befitting from the H.A.L.t Act while House In G.R.V.C/West facilities/C-95 (41) Directive for Removing inmates who attempt suicide in the box/SHU (42) All work orders for Housing unit G.R.V.C yards which I fell and Hurt Back, legs and body.

(4)

(31) All Directives on Prea-follow-up investigators to ensure inmates who allege sexual/Harrasment don't be Retaliated against. (32) All Documents Kevin Smith I.R.C, G.R.V.C director file on my behalf from my time at G.R.V.C (33) All Directives on using the Deaf/Hard of Hearing tty phone for Riker's island. (34) All Directives on inmates being seen by Medical specialist such as urologist for priapism. (35) All work orders from Housing units I resided in since entering G.R.V.C up til Now. (36) All Directives on Hearing/disciplinary proceedings on Riker's island. (37) All Directives on the Conduct of an employee/officer on Riker's island. (38) Directives on A Higher level of Medical care when needed by Riker's island. (39) All Directives on the H.A.L.T Act policy instituted by Governor Kathy Hochul for the state of NY including Riker's island (40) All Directives that prevented court-ordered inmates from benefiting from the H.A.L.t Act while House in G.R.V.C/West facilities/C-95 (41) Directive for Removing inmates who attempt suicide in the box/SHU (42) All work orders for Housing unit G.R.V.C yards which I fell and Hurt Back, legs and body.

(45) Directives on fixing pot holes on Riker's Island in the Jail yards (46) Directives on the work-out equipment to be provided to inmates while housed on Riker's Island court-ordered lock-down housing units. (46) Directives on getting inmates they Auxillary Aids, such as glasses, Hearing Aids, Hyphone in a timely manner. (47) Directive on being frontcuffed when leaving the Facility and you need to use asthma pump and you can't be rear cuffed like all other inmates. (48)

Please All cases for CV 2021 consulidat case please If you can