# The Atlantic Foundation

October 16, 2024

**BY ECF**

The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    Request for Pre-Motion Conference re Discovery
                 *Thompson v. City of New York, et al.*, No. 1:22-cv-1458 (JPO) (KHP)

Dear Judge Parker:

      I write on behalf of Plaintiff Kwaine Thompson (Plaintiff or Thompson), pursuant to Your Honor's Individual Rules of Practice, to respectfully request a pre-motion conference to address the parties' discovery dispute and, if applicable, leave to file a motion to compel the defendants, the City of New York (City) and various correctional officers employed by the Department of Corrections (DOC or Department, and collectively, Defendants), adequately respond to Plaintiff's discovery requests, as more fully explained below.

## BACKGROUND[1]

      On July 9, 2024, Plaintiff served Defendants with eight interrogatories and nine document requests. The majority of interrogatories sought information about the Department's practices and policies related to collecting information on both inmates and employees. Plaintiff also requested Defendants identify individual(s) responsible for inmates' facility assignments.

      Plaintiff requested Defendants produce the personnel files for each C.O. defendant, files and internal correspondence related to three DOC investigations associated with Plaintiff's complaints, copies of logbooks and other records documenting unannounced visits and supervisors' inspections as required by PREA, and any videos and photographic evidence,

---

[1] On June 24, 2024, the Court re-opened discovery based on Plaintiff's request for an opportunity to gather additional evidence in order to adequately respond to Defendants' pending summary judgment motion. See ECF No. 129. At the time, Plaintiff had explained, *see* ECF No. 125 ("56(d) Decl."), additional discovery could help answer questions about his inexplicable, frequent facility transfers (¶ 11), the C.O. defendants' employment and record of complaints (¶19), and the adequacy of the Department's PREA investigations (¶¶ 21, 26).

particularly handheld camera and security camera footage that captured Plaintiff, among other things.

On August 6, Defendants responded to Plaintiff's requests. The majority of interrogatory responses either referred to Defendants' previous document productions or objected on relevance and proportionality grounds. With few exceptions, Defendants similarly objected to Plaintiff's document requests. Defendants did not produce any internal correspondence or video or photo evidence.

Defendants' August 6 production consisted of roughly 50 pages, and of those, over half were general DOC directives and policies (an "Operations Order" and "Directive") on body-worn cameras and hand-held cameras. Defendants also agreed to produce the C.O. defendants' 22-R Forms[2]—a short employment summary—which they did on August 23. Defendants later agreed to produce other materials that would make the 22-R Forms understandable, which occurred on October 8 as part of the parties' meet-and-confer efforts. Those documents though (14 pages in total)—entitled "Memorandum of Complaint" corresponding to a specific disciplinary action—still leave many questions unresolved.

In the ensuing weeks, the parties engaged in meet-and-confer efforts to determine whether they could find some middle ground, but that did not prove to be successful. Accordingly, Defendants should provide responses and produce documents in full and without redaction. Even interrogatories aside, Defendants, at the very least, should produce 1) employee files for the C.O. defendants; 2) PREA investigations and compliance, namely, internal correspondence and certain logbooks related to Plaintiff's allegations; and 3) video and audio recordings of Plaintiff.

## ARGUMENT

As a general matter, a party may obtain discovery into any non-privileged matter that is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b). "The party moving to compel discovery bears the initial burden of demonstrating that the information sought is relevant and proportional," at which point, if successful, the burden shifts to the opposing party to justify curtailing discovery. *See, e.g., Williams v. NYC Bd. of Elections*, No. 23-CV-5460 (AS) (KHP), 2024 WL 2125435, at *3 (S.D.N.Y. May 13, 2024) (cleaned up).

**Plaintiff's discovery requests are relevant and proportional to the needs of the case.** To begin with, the employment records are relevant because they go to show whether the City had knowledge or notice of the C.O. defendants' past misconduct, as well as whether it took

---

[2] A 22-R Form essentially "lists the disciplinary history of an officer and is generated by DOC when a disciplinary proceeding is commenced against the officer." *Nunez v. City of New York*, 2013 WL 2149869, at *6 n.13 (S.D.N.Y. May 17, 2013). Based on counsel's research, a 22-R Form is limited in time (one year duration) and only includes charges that resulted in formal counseling/discipline. After one year, the officer may request for that charge/report to be removed from his/her 22-R Form.

adequate steps to train and supervise its employees. *See* ECF No. 111 at 11 (citing *Doe v. City of New York*, No. 15-CV-0117(AJN), 2018 WL 6095847, at *2 (S.D.N.Y. Nov. 21, 2018) (past complaints serve to "put the City on notice even if… not meritorious")).

Turning to materials associated with the Department's investigations, as previously mentioned, there are months-long gaps in the investigations that suggests no activity or work done. *See* 56(d) Decl. ¶ 26. The requested information thus bears on whether the City made a legally acceptable effort "to forestall or prevent" the alleged misconduct. *See* ECF No. 111 at 13 (citing *Velez v. City of N.Y.,* 2019 WL 3495642 at *6 (S.D.N.Y. Aug. 1, 2019)).

**Defendants' responses and document production, as before, leave many central questions unanswered.** Defendants' boilerplate objections and frequent references to prior responses are defective.

For one thing, Defendants asserted overbreadth and similarly conclusory objections without sufficient justification. *See, e.g., Doe v. Wesleyan Univ.,* 2021 WL 4704852, at *4, 7 (D. Conn. Oct. 8, 2021) (objections require some showing usually with affidavits or other evidence) (citing cases). For another, of the things that have been produced since this case began, much of it is blanketed in redactions and there are multiple claims of privilege in Defendants' production. There is no privilege log to warrant the redactions under both the Federal Rules and Local Rule. If anything, the Court should treat the City's failure to provide a log as a waiver of any applicable privilege. *See, e.g., Brown v. Barnes & Noble*, 474 F. Supp. 3d 637, 646-48 (S.D.N.Y. 2019).

Of the information that's unredacted, the materials are somewhat helpful, but these short snippets offer a myopic, fragmented picture. Take the 22-R Forms: Each contains a few lines of information often in DOC jargon and referencing another document (not included in the production). Further, a 22-R Form may not include all relevant information—say, an inmate's complaint from two years ago—especially if it did not result in formal charges or action. In any event, the 22-R Forms are highly summarized and intended to offer an overview.

**Even more to the point, Defendants' production raises other concerns.** On the whole, Defendants' production, particularly the adequacy and scope of their search, presents more fundamental problems.[3]

Defendants' production appears incomplete. For example, Defendants' production would have included emails between DOC Constituent Services and Plaintiff's former counsel, Mr. Hines, who sent emails about Plaintiff's allegations in June and August 2021. *See* ECF No. 1, ¶¶46, 48. Yet there is only one email in Defendants' production that mentions Mr. Hines, and even that's problematic because it is an edited passage cut and paste from an unknown source. On top of that, Defendants' production does not contain messages from all accounts that referenced

---

[3] The parties did not have any ESI protocol or agreement regarding e-discovery, according to my conversation with defense counsel.

**Hon. Katharine Parker**
Oct. 16, 24
Page 4 of 4

in the documents. It appears that the Department's emails were produced by individual employees' self-selection, not through a central I.T. department or other systematic method. The document production, thus far, reflects a troubling practice of self-collection and self-review without any agreed search terms or reliable verification methods.

Additionally, there may be other repositories or systems that contain responsive evidence. As Mr. Thompson mentioned, correctional officers often wore body-worn cameras in their interactions with him, although none turned up in Defendants' production. To that end, it's worth mentioning that security camera footage is routinely preserved and used for other, unrelated purposes.[4] But it is unclear if Defendants even searched alternative drives or repositories, nor have they been willing to answer questions about their process altogether. Thus, if other litigation may be independently responsive to Plaintiff's requests, Defendants have not given any good reason they should not produce it.

\* \* \*

Thank you very much. I sincerely appreciate the Court's attention to this matter.

Respectfully,

*/s/ Sami Elamad*
Sami Elamad

cc: Counsel of record (via ECF)

---

[4] For example, security camera footage is frequently featured in disciplinary hearings for correctional officers, which are conducted through the City's Office of Administrative Hearings and Trials, or OATH. In many OATH decisions (publicly available), security camera footage is referenced and, at times, serves as a party's exhibit. *E.g., Dep't of Correction v. Lovelace*, OATH Index No. 3501/24 ( July 30, 2024); copy available at https://tinyurl.com/2v2bv7yy.