# The Atlantic Foundation

November 22, 2024

**BY ECF**

The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Thompson v. City of New York, et al.*, No. 22-cv-1458 (JPO)(KHP)

Dear Judge Parker:

      I write respectfully on behalf of Plaintiff Kwaine Thompson ("Plaintiff" or "Thompson") in response to Defendants' latest request for an extension of thirty days to complete discovery, *see* ECF No. 155, as well as to clarify Plaintiff's position and views on discovery. *See* ECF No. 158. (Note: Enclosed with this letter are copies of several e-mail communications with defense counsel, Plaintiff's original discovery requests, Defendants' responses along with their document production with respect to employee discipline.)

      As a preliminary matter, Defendants requested an additional thirty days to search for responsive evidence, but it is wholly unclear why that's taking place almost three years after this case first started. Or even why it's taking place now months after Plaintiff's discovery requests. Defendants' extension request additionally minimizes Plaintiff's concerns and overall position regarding discovery. Plaintiff is particularly troubled with the slow and fragmented stream of production, but will wait to see what Defendants ultimately produce next month.

      By way of background, since the Court first re-opened discovery earlier this year, Defendants have not been transparent or forthcoming in the discovery process and, more to the point, ignored their obligation to be diligent in discovery.[1] In so many words, Defendants have not made it easy. To ensure discovery proceeds swiftly, however, Plaintiff has repeatedly made concessions and abandoned some requests altogether throughout in an attempt to placate Defendants and solicit some type of response. In doing so, Plaintiff has cut many corners and, in other instances, abandoned some requests altogether for the sake of avoiding endless discovery litigation and motion practice.

---

[1] Plaintiff stresses that he has openly expressed his commitment to a workable, collegial discovery process. From the start, Plaintiff expressed that he was "open and flexible" (see Exh. A) and, even more recently, expressed that he was "more than willing to engage in any dialogue" necessary to find a middle ground (see Exh. I).

As one illustrative example, Plaintiff requested the disciplinary/personnel files for each of the individual C.O. defendants over the past several months. Notably, even though Plaintiff's request has not changed or been revised, Defendants have offered a dizzying number of responses:

- At first, Defendants refused to provide an response altogether, protesting that the requests were "not relevant." *See, e.g.,* Exh. C at 9-10; Exh. E at 2 ("defendants maintain their prior responses").

- Along the way, Defendants pivoted, arguing that Plaintiff was not entitled to discovery because he failed to assert *Monell* claims. *See, e.g.,* Exh. F.

- Then, Defendants seemingly agreed to produce employment-related discovery. Not surprisingly, though that discovery turned out to be no more than a few pages—known as 22-R forms—which fell flat for several reasons. *See* Exh. G; *see also* ECF No. 147 at 3.

- After back and forth, Defendants agreed to produce additional materials, *see* Exh. H, which turned out to be somewhat helpful but left central questions unanswered.

Last month, Plaintiff wrote to the Court about his discovery-related concerns and, as an example, pointed to the sufficiency and completeness of Defendants' production. *See* ECF No. 147 at 3-4. In response, Defendants reprised their characteristic set of arguments. *See* ECF No. 150 at 4-5 (characterizing Plaintiff's request as "vague", not "properly discoverable", and part of "fishing expedition"). Perhaps recognizing the futility of these arguments, Defendants lastly exclaimed that their previous productions had satisfied their discovery obligations and was "all plaintiff needs." *See id*.

Without many options, in the intervening period, Plaintiff essentially undertook a research project to independently find out more about how and where the New York City Department of Corrections ("DOC" or "Department") maintains information about correctional officers and misconduct. To Plaintiff's surprise, the Department maintains *at least six* different databases for the specific purpose of employee discipline and the like.[2] And a few weeks ago, Plaintiff raised the above with defense counsel as part of the parties' meet-and-confer efforts.

Today, nearly six months into discovery, Defendants seemingly concede the possibility that other responsive information in their possession/control may exist only *after* Plaintiff was able to name each DOC database. To be clear, Plaintiff asked Defendants about their practices and databases, *see* Exh. B at 4-5, but unsurprisingly, encountered roadblock after roadblock.

---

[2] *See* Exh. J at 2 ("By my count, the Department uses at least six databases for information about employee discipline and use of force, including Time Matters, Service Desk, Case Management System (CMS), CAPPI/ITTS (Investigations, Trials, Tracking System), PREA tracker, and Trials Tracker").

**Hon. Katharine Parker**
Nov. 22, 24
Page 3 of 3

\*      \*      \*

Separately, Plaintiff is fundamentally concerned with Defendants' overall discovery process, including their ESI production especially their method of self-review and self-collection, as well as their extensive redactions in the absence of a privilege log, as he previously explained. *See* ECF No. 147 at 3-4.[3] Those concerns apply with equal force today.

In sum, Plaintiff will wait until next month for Defendants' document production, but if discovery continues as it has so far, Plaintiff intends to renew his pre-motion letter and will pursue all available remedies as appropriate—whether that's an evidentiary hearing, exclusionary order, adverse inference instruction, and/or sanctions, or some combination of them under statute, court rules, and the Court's inherent authority.

\*      \*      \*

Thank you very much. I sincerely appreciate the Court's attention to this matter.

Respectfully,

/s/
Sami Elamad

Attachments/Exhibits
- A. Plaintiff's July 9, 2024 email
- B. Plaintiff's original discovery requests to Defendants
- C. Defendants' original discovery responses
- D. Plaintiff's meet-and-confer Sept. 13, 2024 email
- E. Defendants' letter response to Plaintiff's Sept. 13 email
- F. Plaintiff's email follow-up chain (Oct. 7, 2024)
- G. Defendants' 22-R production
- H. Defendants' Memorandum of Complaint production
- I. Plaintiff's October 29, 2024 email
- J. Plaintiff's November 13, 2024 email

cc:     Counsel of record (via ECF)

---

[3] Contrary to Defendants' version of events— that "plaintiff never once raised any issues concerning any of defendants' redactions," ECF No. 150 at 5—Plaintiff has actually raised the issue on several occasions. *See, e.g.,* Exh. D ("the added reactions do not make things easier") & ("other employee violations are redacted altogether"). Either way, Defendants' redactions operate as a waiver and should be treated as such.