UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KWAINE THOMPSON,

    *Plaintiff*

-against-

CITY OF NEW YORK, *et al.*,

    *Defendants*

No. 22-cv-1458 (JPO) (KHP)

**ORAL ARGUMENT
REQUESTED**

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Sami Elamad
THE ATLANTIC FOUNDATION
450 Lexington Avenue
Box 69
New York, NY 10163
Tel. (646) 685-3954
Fax (646) 712-9501
sami@the-atlantic-foundation.org

*Pro Bono Counsel for Plaintiff*

## **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................................. 1

    I.    Procedural History ............................................................................................................ 1

    II.   Relevant Factual Context ................................................................................................. 1

ARGUMENT ........................................................................................................................................ 2

    I.    Defendants Did Not—And Cannot—Meet Their Burden on Summary Judgment ............ 2

    II.   On the Merits, Whether Old or New, Record Evidence Cuts Against Defendants. ............. 3

     A.  The supplemental discovery demonstrates Defendants' deliberate indifference and, on the whole, supports Plaintiff state-law claims. ......................................................................... 3

          1.  Employee misconduct goes unchecked. The Department regularly rewards bad behavior, giving promotions, departmental recognitions, and the like to employees despite recent misconduct. .................................................................. 4

          2.  DOC investigations are fraught, unreliable and, more to the point, fail to meaningfully respond to inmates' reports constitutional violations. ..................... 5

CONCLUSION .................................................................................................................................... 5

APPENDIX: GLOSSARY OF TERMS ............................................................................................... 7

Plaintiff Kwaine Thompson ("Plaintiff" or "Thompson") submits the following supplemental brief in opposition to the pending motion for summary judgment filed by defendants, the City of New York, along with its Department of Corrections ("DOC" or "Department"), as well as various correctional officers on Rikers Island (the "C.O. defendants" or "individual defendants") (collectively, "Defendants" or "City"). *See* ECF Nos. 85-88, 129.

## BACKGROUND[1]

### I.     Procedural History

Following Defendants' motion for summary judgment, the Court granted Plaintiff's request to re-open discovery to allow him opportunity to request and gather evidence as part of his opposition. *See* ECF 119. In the ensuing months since June 2023, Plaintiff issued various discovery requests to Defendants, to which they provided various responses and produced several sets of documents. Following the latest discovery conference, the Court ordered the close of discovery and directed that Plaintiff may submit a supplemental brief up to five pages based on Defendants' document production. ECF No. 167. *Id.*

### II.    Relevant Factual Context

Between 2019 and 2023, Plaintiff was incarcerated on Rikers Island as a pretrial detainee. As relevant here, in August 2020, Plaintiff was transferred to VCBC where he'd stay for the next year or so, which gave rise to the events in this case*, i.e.,* sexual misconduct by correctional officers, particularly C.O. Brumfield, C.O. Simmons, and Captain Palmer-Campbell. *See, e.g.,* ECF No. 45 (operative complaint); ECF No. 111 (Plaintiff's opposition brief). Briefly stated, in exchange for his cooperation, Plaintiff received special treatment, gifts, and other quid-pro-quo privileges for his participation in various sex acts with officers. *See, e.g.,* ECF 113 ¶¶ 20, 32.

---

[1] This assumes parties' familiarity with the facts and background of this case.

1

**ARGUMENT**

I.      **Defendants Did Not—And Cannot—Meet Their Burden on Summary Judgment**

Defendants failed to satisfy their initial burden on summary judgment as the moving party. For that reason alone, the Court should deny Defendants' motion, as Plaintiff previously explained. *See, e.g.,* ECF Nos. 111, 125.

*First,* Defendants did not present any adequate evidence based on personal knowledge to pass legal muster. For example, as opposed to putting forth any its own officer-defendants' testimony, the City impermissibly tries to get by with repeated blanket denials refusing to accept Plaintiff's experiences. *See, e.g.,* ECF No. 125 at 1-2 ("Tellingly, Defendants did not offer any affidavits [] or admissible evidence based on personal knowledge to effectively counter Plaintiff's version of events…") (citing, *inter alia, Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970); *see also id.* at n.1 (highlighting City's blanket denials) (citing ECF No. 121 ¶¶ 17-20). Furthermore, Defendants failed to refute Plaintiff's version of events with any admissible evidence. *See* Fed. R. Civ. P. 56(c)(2). Tellingly, Defendants' only evidence in support of their motion is a declaration filed by their counsel. ECF No. 85 (Defendants' only declaration accompanying their summary judgment motion by counsel). As another illustrative example, Defendants have done nothing to explain why or how Plaintiff was frequently transferred and assigned to various buildings despite his lockdown status. *See* ECF Nos. 113 ¶ 6; 119 ¶ 11-12.[2]

*Second*, Defendants mistakenly insist that the Court should disregard most of Plaintiff's testimony, heavily relying on a narrow exception first enumerated in *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). Defendants further argue Plaintiff's allegations should be

---

[2] In response to Plaintiff's interrogatory requesting Defendants identify any witnesses who could speak to Plaintiff's housing assignments, Defendants did not offer any clear answer and responded with objections. ECF No. 160-3 at 13 (copy of Defendants' response to identify "persons who were responsible for changes and transfers in Plaintiff's housing/facility assignments"); *see also* ECF No. 160-4 at 2.

2

discarded and limited to three incidents of sexual abuse. Either way, the argument fails for several reasons. *See* ECF No. 111 at 5-7. In the absence of competent evidence—say, a C.O.'s affidavit— Defendants cannot prevail by putting most of their weight in arguments attacking Plaintiff's credibility. For one, *Jeffreys* is inapposite and, thus, does not apply here. Besides, it's well-settled that Plaintiff, as the non-movant, has the benefit of the having factual inferences drawn as his favor. Put simply, Plaintiff's version of events should prevail. *See, e.g.,* ECF No. 125 at 1-2 (citing, *inter alia*, *Scott v. Harris*, 550 U.S. 372, 378 (2000)). Besides, under *Jeffreys'* logic, Plaintiff nonetheless prevails because there are several plausible explanations for his purported inconsistencies. *See, e.g.,* ECF 111 at 7 (retaliation and issues of masculinity).

## II.  On the Merits, Whether Old or New, Record Evidence Cuts Against Defendants.

As a preliminary matter, many of Plaintiff's allegations occurred behind closed doors and away from security cameras. No witnesses, no cameras, and no third-party evidence to reliably prove (or even disprove) one party over another. Take, for instance, video footage obtained from security cameras on Rikers Island, which do not provide continuous, running coverage. *See* ECF Nos. 112, Exh. 11; 129 ¶ 10.[3] If that weren't enough, of the footage available, the footage does not even show what Defendants claim it does, which unsurprisingly adds to the chaos.

### A.  The supplemental discovery demonstrates Defendants' deliberate indifference and, on the whole, supports Plaintiff state-law claims.

Plaintiff's complaint asserts state law claims of negligence as well as negligent hiring, retention, and supervision, among other things. Based on the supplemental discovery produced, the Department ran afoul of the basic obligations owed to inmates, all of which goes to show

---

[3] *See* ECF No. 121 at 12 [¶ 44] (Defendants' admission that "security camera footage does not run continuously because the cameras activate based on motion and does not run if there is no activity"); *see also Benjamin v. Molina*, ECF 1:75-cv-3073, Dkt. 733 at 92 (Independent Monitor raising concerns about "unexplained gaps" in video footage, to which the Department responded that "the system is motion-based" for lack of recorded video).

Defendants' negligence. As more set forth below, the City has failed to forestall or meaningfully respond to inmate reports of unconstitutional conditions despite having sufficient notice.

1. <u>Employee misconduct goes unchecked. The Department regularly rewards bad behavior, giving promotions, departmental recognitions, and the like to employees despite recent misconduct.</u>

Take Defendant Montague, for instance, who received several write-ups and citations for making fraudulent logbook entries, providing false information, and repeatedly failing to conduct PREA-required checks as a supervisor. *See, e.g.,* ECF No. 159-7 & 159-8. For example, in one June 2019 violation, Montague was supposed to conduct a PREA-required unannounced inspection as a captain. ECF No. 159-8 at 7-9. Montague made false entries appearing as though he actually conducted an inspection, or even stayed for more than a few minutes. In reality, he entered the dayroom for a moment, signed the logbooks as conducting a complete tour, and exited two minutes later. *Id.* Consistent with Plaintiff's OWN allegations, Montague did not adequately investigate or respond to inmate reports under PREA. If anything, it's quite likely that, as Plaintiff alleged, Montague shrugged off reports of abuse (despite, as here, Plaintiff's repeated follow-up attempts). *See* ECF No. 119 ¶¶ 16-18.

To top it all off, the Department seemingly rewards misbehavior, giving out promotions and awards to employees, revealing questionable lapses in judgment. Again, take Montague, who received multiple violations: He received several awards and departmental recognitions during the relevant period. Or Palmer-Campbell who received a 2021 departmental award, *see* ECF No. 159-7, and, around the same time, several misconduct violations, including one 2020 incident of flatly lying to DOC investigators and making up an entire story that proved to be false by security cameras, ECF No. 159-8 at 4-6. *See id.* at 5 ("Captain Palmer-Campbell did not take a step back before falling…The Captain dramatically fell out on the floor") (cleaned up).

4

     2. <u>DOC investigations are fraught, unreliable and, more to the point, fail to meaningfully respond to inmates' reports constitutional violations.</u>

The Department's investigations are woefully insufficient and do not come close to meeting basic legal obligations, as Plaintiff previously mentioned. *See, e.g.,* ECF No. 113 ¶¶ 38, 39, 44-46. Considering the supplemental discovery, consider one 2015 incident involving C.O. Brumfield where an inmate alleged that an unknown officer inserted their finger into his rectum several times. Note: the inmate could not identify the officer because he was punched and beat down by officers and forced down on the floor. As with Plaintiff's accounts and corresponding DOC investigations, there are a striking number of similarities:

1. There was no footage of incident because there are no security cameras in the VCBC clinic. Exh. A at 4.

2. None of the inmates who may have witnessed the incident came forward or agreed to offer information. Exh. A at 5-6 (inmate "[r]refused to give/write statement").

3. The C.O.'s involved all shared the same story with investigators, notwithstanding one who officer who retired and another who "did not have a [*sic*] independent recollection of this incident." Exh. A at 8.

4. DOC investigators ruled against the inmate based, in part, on recordings of the inmate's phone calls with friends and family on the ground he did not *explicitly* speak about sexual assault, much of which is arbitrary and taken out of context. Exh. A at 9.

Even etting all of this aside, it is unclear what type of corrective plans, discipline, or training the Department subjects employees for misconduct. At least on this record, it is unclear if DOC employees receive training or must satisfy any requirements prior to returning to work.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' motion for summary judgment and proceed to trial.

///

Dated: January 3, 2025
      New York, NY

                                                 */s/ Sami Elamad**

---

*Admitted pro hac vice*

## APPENDIX
### Common Abbreviations and Conventions

"Compl." or "SAC" refers to the operative complaint, ECF No. 45, the Second Amended Complaint.

"C.O." refers to a correctional officer.

"Department" or "DOC" refers to the New York City Department of Corrections.

"Exh." refers to the Exhibit of Sami Elamad, dated January 3, 2025, and filed concurrently with this brief in opposition to Defendants' motion for summary judgment.

"GRVC" refers to the George R. Vierno Center on Rikers Island.

"PREA" refers to the Prison Rape Elimination Act, 42 U.S.C. § 15601.

"VCBC" refers to the Vernon C. Bain Correctional Center—also known as "the Boat"—on Rikers Island.