**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KWAINE THOMPSON,

                Plaintiff,

    vs.

CITY OF NEW YORK, *et al.*

              Defendants.

No.  22-cv-1458 (JPO)

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**DEFENDANTS' MOTION IN *LIMINE* AND TRIAL MATERIALS**

## TABLE OF CONTENTS

ARGUMENT .......................................................................................................... 1

I.    THE CITY IS A DEFENDANT AND PLAINTIFF SHOULD BE ABLE TO SAY SO. . 1

   A.    Bifurcation ............................................................................................... 1

   B.    Negligent Hiring and Negligence Claims ........................................... 3

   C.    Other Efforts To Scrub "Defendant City of New York" ................... 4

II.   PLAINTIFF'S ASSAULT/BATTERY CLAIMS DO NOT "SUBSUME" HIS SECTION
1983 CLAIMS. ............................................................................................. 5

III.  PLAINTIFF AND LAY WITNESSES SHOULD BE PERMITTED TO TESTIFY
ABOUT PLAINTIFF'S INJURIES. .......................................................................... 6

IV.   DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE
OF PLAINTIFF'S CRIMINAL BACKGROUND ....................................................... 8

   A.    Thompson's 2025 Criminal Case and Plea ........................................ 8

   B.    Plaintiff's 2023 Robbery Conviction and 2016 Bail Jumping Conviction ................... 9

V.    DEFENDANTS' DISCIPLINARY HISTORY AND DOC INVESTIGATION
RECORDS SHOULD NOT BE PRECLUDED. ..................................................... 12

   A.    Disciplinary Histories ......................................................................... 12

   B.    DOC Investigation Files/Records ...................................................... 13

VI.   PLAINTIFF'S WITNESSES/EXHIBITS SHOULD NOT ALL BE PRECLUDED... 13

VII.  PLAINTIFF'S EXHIBITS AND EVIDENCE ARE RELEVANT AND
ADMISSIBLE .................................................................................................. 14

   A.    Security Camera Footage .................................................................... 15

   B.    DOC Policies ......................................................................................... 15

VIII. DEFENDANTS' "SPECIFIC DOLLAR AMOUNT" AND INDEMNIFICATION
ARGUMENTS ARE INAPPLICABLE. .................................................................. 16

IX.   DEFENDANTS' VERDICT SHEET IS MISLEADING. ........................................ 17

X.    DEFENDANTS' JURY CHARES ARE SIMILARLY INAPPROPRIATE. ................ 17

XI.   DEFENDANTS' VOIR DIRE IS IMPERMISSIBLE. .......................................... 18

CONCLUSION ....................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Adams v. City of New York,*
993 F. Supp. 2d 306 (E.D.N.Y. 2014) ....................................................................... 5

*Brown v. Cornell,*
2021 WL 2711511 (N.D.N.Y. July 1, 2021) ...............................................................10

*Byfield v. Chapman,*
141 F. Supp. 3d 221 (W.D.N.Y. 2015) ....................................................................... 7

*Colson v. Mingo,*
No. 18-CV-2765, 2025 WL 688832 (S.D.N.Y. Mar. 4, 2025) ..................................... 7

*Computer Assocs. Int'l, Inc. v. Simple.com, Inc.,*
247 F.R.D. 63 (E.D.N.Y. 2007) ................................................................................. 2

*Doe v. Lima,*
No. 18-cv-3147, 2020 WL 728813 (S.D.N.Y. Feb. 13, 2020)..................................... 10

*Dunham v. Lobello,*
No. 19-cv-2749, 2023 WL 3004623 (S.D.N.Y. Apr. 19, 2023) ................................... 7

*Edwards v. City of New York,*
No. 08-cv-2199, 2011 WL 2748665 (E.D.N.Y. July 13, 2011) ................................... 12

*Galgano v. Cnty. of Putnam,*
No. 16-cv-3572, 2020 WL 12968021 (S.D.N.Y. Sept. 9, 2020) ................................. 8

*Holley v. Spinner,*
No. 15-cv-5569, 2025 WL 2410372 (S.D.N.Y. Aug. 20, 2025) ................................. 7

*In re Grand Jury,*
219 F.3d 175 (2d Cir. 2000) ...................................................................................... 8

*Ismail v. Cohen,*
706 F. Supp. 243 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990) ..................... 13

*Jaffee v. Redmond,*
518 U.S. 1 (1996) ...................................................................................................... 8

*Kerman v. City of New York,*
No. 96 Civ. 1764, 1997 WL 666261 (S.D.N.Y. Oct. 24, 1997) ................................. 2

*Lewis v. City of Albany Police Dep't,*
547 F. Supp. 2d 191 (N.D.N.Y. 2008), aff'd, 332 F. App'x 641 (2d Cir. 2009) ........................ 13

*Lewis v. City of New York,*
689 F. Supp. 2d 417 (E.D.N.Y. 2010) ........................................................................................... 5

*Local 3621, EMS Officers Union v. City of New York,*
No. 18-cv-4476 (LJL), 2021 U.S. Dist. LEXIS 104810 (S.D.N.Y. June 2, 2021) ..................... 14

*Lugo v. City of New York,*
No. 14-cv-7185, 2018 WL 11466167 (S.D.N.Y. July 13, 2018) ................................................. 12

*Marshall v. Port Auth. of N.Y. & N.J.,*
No. 19-cv-2166, 2022 WL 17491006 (S.D.N.Y. Dec. 5, 2022) ................................................. 10

*Martinez v. City of New York,*
No. 16-cv-79, 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022) ..................................................... 5

*Mensler v. Wal-Mart Transp., LLC,*
No. 13-cv-6196, 2015 WL 7573236 (S.D.N.Y. Nov. 24, 2015) ................................................... 5

*Mineo v. City of New York,*
No. 09-CV-2261 (RRM) (MDG), 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013) ....................... 3

*Pemberton v. City of New York,*
No. 18-cv-7908, ECF No. 143 (S.D.N.Y. Sept. 26, 2022) ........................................................... 5

*Phillips v. City of New York,*
871 F. Supp. 2d 200 (E.D.N.Y. 2012) ........................... .................................................... 12

*Rahman v. Lee,*
No. 21-cv-2531, 2024 WL 4043697 (S.D.N.Y. Sept. 4, 2024) ..................................................... 7

*Ridge v. Davis,*
639 F. Supp. 3d 465 (S.D.N.Y. 2022) ........................................................................................ 10

*Rodriguez v. Robinson,*
No. 18-cv-8937, 2019 WL 5865115 (S.D.N.Y. Nov. 8, 2019) ..................................................... 7

*Rosario v. City of New York,*
No. 18-cv-4023, 2021 WL 9455782 (S.D.N.Y. Nov. 23, 2021) ................................................... 5

*Sunegova v. Vill. of Rye Brook,*
No. 09-cv-4956, 2011 WL 6640424 (S.D.N.Y. Dec. 22, 2011) ................................................... 8

*Tardif v. City of New York,*
No. 13-cv-4056, 2022 WL 2292049 (S.D.N.Y. June 24, 2022) ........................................ 10

*Ulfik v. Metro-N. Commuter R.R.,*
77 F.3d 54 (2d Cir. 1996) ................................................................................................ 7

*United States v. Garcia,*
291 F.3d 127 (2d Cir. 2002) ........................................................................................... 13

*United States v. Tubol,*
191 F.3d 88 (2d Cir. 1999) ............................................................................................. 13

*WeddingChannel.com Inc. v. The Knot, Inc.,*
No. 03-CV-7369, 2004 WL 2984305 (S.D.N.Y. Dec. 23, 2004) ................................................. 2

**Statutes & Rules**

Fed. R. Civ. P. 26 ............................................................................................................. 13, 14

Fed. R. Civ. P. 37(c)(1) .................................................................................................... 14

Fed. R. Evid. 403 ............................................................................................................. 11

Fed. R. Evid. 609(a)(1) .................................................................................................... 11

Fed. R. Evid. 609(a)(2) .................................................................................................... 10

Fed. R. Evid. 609(b) ........................................................................................................ 10

Fed. R. Evid. 801(d)(2) .................................................................................................... 14

Fed. R. Evid. 803(4) ........................................................................................................ 7

Fed. R. Evid. 803(6) ........................................................................................................ 15

Fed. R. Evid. 803(8) ........................................................................................................ 15

Fed. R. Evid. 1006 ........................................................................................................... 15

**Other Authorities**

Manhattan Institute, *Destroyed by Discovery: How New York State's Discovery Law Destabilizes the Criminal Justice System,* https://manhattan.institute/article/destroyed-by-discovery-how-new-york-states-discovery-law-destabilizes-the-criminal-justice-system
 (last visited Oct. 20, 2025) ........................................................................................... 9

iv

The Bail Project, *Having Your Day in Court*, https://bailproject.org/policy/having-your-day-in-court/ (last visited Oct. 20, 2025) ............................................................................ 9

Vera Institute of Justice, *How the Criminal Legal System Coerces People into Pleading Guilty*, https://www.vera.org/news/how-the-criminal-legal-system-coerces-people-into-pleading-guilty (last visited Oct. 20, 2025) ............................................................................ 9

Plaintiff Kwaine Thompson, by and through his undersigned *pro bono* counsel, submits the following opposition in response to Defendants' motion in limine, which seeks sweeping exclusions and structural changes that would (i) hamstring Plaintiff's ability to prove his remaining claims and (ii) inject avoidable juror confusion by framing questions in a way that implies a criminal standard or criminal proceeding. Plaintiff opposes the motion point-by-point (Points I–XVII), and separately objects to Defendants' proposed verdict sheet, jury charges, and voir dire where those materials misstate standards or risk confusing/misleading the jury.

## ARGUMENT

### I.    THE CITY IS A DEFENDANT AND PLAINTIFF SHOULD BE ABLE TO SAY SO.

Defendants spend a considerable amount of time in an attempt to divorce the City of New York from any type of role in this proceeding, arguing for example that Plaintiff's case should be bifurcated.  *See* Def. Mtn. (Pts. I-III). This new strategy by Corporation Counsel's office seems more like a calculated effort in strategy than in substance, despite their purported attempts to reframe it as such.

The Court should deny Defendant's request to bifurcate liability and damages because it promotes inefficiency, and a single trial presents minimal risk of prejudice.

#### A.  Bifurcation

To begin, Defendants' motion never meaningfully engages with the consideration relevant to bifurcation. *See Butler v. Suffolk County,* 2025 WL 267976, at *3 n.4 (S.D.N.Y. Jan. 22, 2025) ("To determine whether bifurcation is warranted, courts generally consider the following three factors: '1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses.'") (quoting *WeddingChannel.Com Inc.*

*v. The Knot, Inc.,* No. 03-CV-7369, 2004 WL 2984305, *1 (S.D.N.Y. Dec. 23, 2000)). Further, Defendants neither identify concrete prejudice that cannot be cured by ordinary limiting instructions nor explain how splitting overlapping witnesses and records would promote efficiency or clarity. Besides, "[b]ifurcation is the exception, not the rule." *Id.* at *1 (quoting *Computer Assocs. Int'l, Inc. v. Simple.com, Inc*., 247 F.R.D. 63, 67 (E.D.N.Y. 2007) (collecting cases)). For that reason alone, the Court may deny the bifurcation request. *See Kerman v. City of New York*, No. 96 Civ. 1764, 1997 WL 666261, at *5 (S.D.N.Y. Oct. 24, 1997) ("The moving party bears the burden of establishing that bifurcation is warranted").

Defendants rely heavily on *Mineo v. City of New York* to justify bifurcation, but *Mineo* cannot bear that weigh. *See* Mtn. at 3-6. Bifurcation is not necessary or warranted here. Separate phases would duplicate proof, lengthen trial, and confuse jurors about what they may consider and when.

*First*, bifurcation was not even disputed by the plaintiff—in fact, the *Mineo* plaintiff *consented* to Defendant's request in large part. *See Mineo v. City of New York*, No. 09-CV-2261 RRM MDG, 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013) (noting that the plaintiff "does not oppose" defendant's request to "bifurcate for trial plaintiff's remaining individual claim for excessive force against Kern from plaintiff's Monell claim against the City"). The *Mineo* court bifurcated a single remaining individual excessive-force claim from a pending *Monell* claim, and then split liability from damages.

*Second*, based on its procedural posture, *Mineo* is also distinguishable. *Mineo* arose from a street-arrest incident involving NYPD officers, including later subway-car events, and a sprawling *Monell* theory with evidence the court viewed as admissible only against the City, for example. *Mineo v. City of New York*, ECF 09-CV-2261, First Amended Complaint, Dkt. 31, Oct.

2

12, 2009. By contrast, here, it's unclear what, if anything, Defendants believe is admissible against the City considering the breadth of their arguments.

*Third*, and finally, the *Mineo* complaint alleged a broad constellation of claims— including  malicious prosecution, conspiracy, abuse of process— highlighting a non-overlapping evidentiary universe that the court found suitable for phased trials. *Mineo*, Dkt. 31. That is a far cry from this custodial-abuse case, where bifurcation would duplicate testimony and sow juror confusion without any offsetting efficiency.

### B.  Negligent Hiring and Negligence Claims

The City likewise attempts another run around, trying to prevent any negligence claim from being seen by the jury. Defendants' attempt to preclude all negligence-based theories ignores that New York tort law provides alternative, coexisting routes to relief (e.g., negligent hiring, training, supervision) that are distinct from federal claims.

With respect to the negligent hiring claim, Defendants erroneously argue for a speculative, future Rule 50 stipulation on scope of employment; no such binding stipulation exists now. Defendants also cannot have it both ways. In the end, they ultimately retreat to the self-serving notion that they anticipate that they'll agree to stipulations "based on the record and trial evidence" after trial. *See* Mtn. at 6. That is dubious and, frankly, unreliable. Defendants could not even agree to one agreed stipulation or factual statements with Plaintiff despite various efforts. The City's own arguments (*see* Point XIV) shows the breadth of what it seeks to scrub. The narrower—and appropriate—tool, at most, is a balanced instruction, not rewriting who the parties are on the eve of a jury trial. Again, for similar reasons, NIED rests on distinct standards (duty/breach) and exist in the alternative to constitutional failure-to-intervene. They are not duplicative; they ensure a complete remedy for non-intervention conduct even if the jury

resolves federal elements differently. The City's "subsumption" theory would improperly narrow state-law routes to relief.

### C.  Other Efforts To Scrub "Defendant City of New York"

For one reason or another, the City concedes it remains a defendant but it seeks to hide that from jurors. Plaintiff objects across the board to Defendants' requests.

For starters, "City attorneys" is not prejudicial. Plaintiff must be able to accurately identify defense counsel as Corporation Counsel for the City of New York—this is neutral, accurate, and avoids confusion about who the lawyers represent. The City's own brief shows it seeks to sanitize any mention of the City's role in defending officers; that goes too far. Where the City of New York remains a defendant at trial, Plaintiff is not barred from referring to "City attorneys." *See Tardif v. City of New York*, 344 F. Supp. 3d 579, 608 (S.D.N.Y. 2018) (Wood, J.). As other courts have held, Defendants should not be permitted to hide their identities or true roles in this case. *See, e.g., Adams v. City of New York,* 993 F. Supp. 2d 306, 329 (E.D.N.Y. 2014) (Brodie, J.) ("Defendants' argument is flatly rejected. Where, as here, the City of New York is a Defendant in the case, the City of New York will be listed on all documents and will be identified to the jury. The Court also rejects Defendants' request that the Court not refer to the City attorneys as 'City attorneys.'").

Additionally, Defendants' request that City be removed from the caption and jury materials is misplaced. The City remains a defendant; its attempt to erase itself is misleading. Any theoretical "deep-pocket" concern is easily handled by a standard instruction that the caption has no bearing on liability or damages. Courts in this Circuit have said exactly that: even where judges prefer neutral references like "Corporation Counsel" or "defense counsel," they have rejected tinkering with the caption to obscure the City's party status. *See, e.g., Martinez v.*

*City of New York*, No. 16-cv-79, 2022 WL 17090267, at *8 (E.D.N.Y. Nov. 18, 2022);

*Pemberton v. City of New York*, No. 18-cv-7908, ECF No. 143 (S.D.N.Y. Sept. 26, 2022);

*Rosario v. City of New York*, No. 18-cv-4023, 2021 WL 9455782, at *1 (S.D.N.Y. Nov. 23,

2021).

More fundamentally, it should go without saying that counsel can try this case

professionally; if either side strays, the Court can cure contemporaneously. A vague, preemptive

gag order—effectively what defense counsel seeks— is unnecessary and risks chill and mini-

trials over semantics and wording.  Courts have declined to bifurcate in matters that are much

likelier to sway juror emotions than this one. *See Mensler v. Wal–Mart Transp*., LLC, 2015 WL

7573236, *3-4 (S.D.N.Y. Nov. 24, 2015) (reviewing cases, including wrongful death and other

serious injury cases, and declining to bifurcate). And in any event, the cure for potential

prejudice arising from juror sympathy is a curative instruction, not bifurcation. *Lewis v. City of

New York*, 689 F. Supp. 2d 417, 429 (E.D.N.Y. 2010).

## II.    PLAINTIFF'S ASSAULT/BATTERY CLAIMS DO NOT "SUBSUME" HIS SECTION 1983 CLAIMS.

Perhaps recognizing the futility of their arguments, Defendants' last-ditch claim is that

Plaintiff's state assault and battery causes of action are "subsumed" by his federal § 1983 sexual-

assault claim. Mtn. at 7-8. Not so. That framing is just another attempt to sever the City from this

case.

The state torts do not require proof of a constitutional violation or "under color of law,"

so they provide an independent route to liability if the jury credits the facts but is uncertain about

the federal elements. In New York, for example, battery is the intentional, nonconsensual,

harmful or offensive touching; assault is the intentional placing of another in reasonable

apprehension of an imminent harmful or offensive touching. Either tort can be established on a

5

preponderance of the evidence without the constitutional threshold that § 1983 imposes. Submitting both ensures a complete remedy while any risk of double recovery is cured by a standard instruction limiting the jury to a single recovery for overlapping harms.

Moreover, Defendants' "subsumption" theory would improperly erase alternative theories and risk an incomplete remedy if the jury credits one framework but not the other. Any concern about double recovery can be eliminated by a standard instruction that there can be only one recovery for overlapping harms.

### III. PLAINTIFF AND LAY WITNESSES SHOULD BE PERMITTED TO TESTIFY ABOUT PLAINTIFF'S INJURIES.

Defendants argue that Plaintiff should be precluded from offering any testimony or evidence with respect to causation and damages (Point V). Defendants' rule is legally insupportable.

While Rule 701 of the Federal Rules of Evidence prohibits opinion testimony by lay witnesses, or testimony based on scientific, technical, or other specialized knowledge, "this Rule does not bar a witness from testifying about their factual experiences of their own injuries." *Holley v. Spinner,* 2025 WL 2410372, at *8 (S.D.N.Y. Aug. 20, 2025) (quoting *Colson v. Mingo*, No. 18-CV-2765, 2025 WL 688832, *3 (S.D.N.Y. Mar. 4, 2025)). In other words, Plaintiff can testify about the injuries he experienced, the circumstances under which his symptoms arose, and the diagnosis he was given for its effect on his conduct. *Cf., e.g., Rodriguez v. Robinson*, 2019 WL 5865115, at *2 (S.D.N.Y. Nov. 8, 2019) ("Because plaintiff is entitled to testify about his belief as to the causation of his injuries, this motion is denied.").

Moreover, the Court should allow Plaintiff to testify about his belief about the cause of his injuries. An expert is not required to opine on the cause of an injury when "jurors may draw upon their own everyday experiences and observations to comprehend the facts and come to their

own conclusions as to causation." *Byfield v. Chapman*, 141 F. Supp. 3d 221, 225 (W.D.N.Y. 2015); *see also Ulfik v. Metro N. Commuter R.R.,* 77 F.3d 54, 58 (2d Cir. 1996) ("trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness"). At best, Defendant's cited authority supports the proposition that a layperson may not testify about their diagnosis absent accompanying medical records or testimony by a physician/expert. That, however, does not mean a layperson can *never* do so.

Contrary to Defendants' telling, "lay witnesses can testify about the subject of damages and traditionally do so," which is particularly instructive in the § 1983 context. *See Rahman v. Lee,* 2024 WL 4043697, at *3-4 (S.D.N.Y. Sep. 4, 2024) (quoting *Dunham v. Lobello*, 2023 WL 3004623, at *12 (S.D.N.Y. Apr. 19, 2023)). True enough, Plaintiff agrees lay witnesses cannot give medical diagnoses. But Plaintiff and percipient witnesses may testify to symptoms, pain, fear, and mental suffering they personally observed, which are classic lay subjects contrary to Defendants' arguments. *See* Mtn. at 11-13. Medical records and care-seeking are also admissible for non-hearsay purposes (e.g., notice, state of mind), and certain statements for treatment fall under Rule 803(4). Put simply, a categorical bar is improper.

Beyond that, Defendants also preview an overbroad use of psychotherapy and mental-health materials that would invade Mr. Thompson's psychotherapist-patient privilege and needlessly confuse the jury. For that reason, Plaintiff recently filed a letter-motion requesting the Court issue a protective order. *See* ECF No. 249.

Under Federal Rule of Evidence 501 and *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), confidential communications between a licensed psychotherapist (including clinical social workers) and a patient during diagnosis or treatment are privileged; "the mere possibility of

disclosure may impede" treatment. *Id.* at 10. While the privilege may be waived, the Second

Circuit instructs courts to be especially protective where unrepresented litigants risk inadvertent

forfeiture and to employ calibrated remedies that preserve privilege while allowing a fair trial.

*Sims v. Blot*, 534 F.3d 117, 133–34 (2d Cir. 2008); *see also Galgano v. Cnty. of Putnam*, No. 16-

cv-3572, 2020 WL 12968021, at *1 (S.D.N.Y. Sept. 9, 2020); *Sunegova v. Vill. of Rye Brook*,

No. 09-cv-4956, 2011 WL 6640424, at *10 (S.D.N.Y. Dec. 22, 2011). Relatedly, courts police

against using privilege "as a sword," but here Plaintiff expressly disclaims any use of privileged

therapy communications at trial. *See In re Grand Jury*, 219 F.3d 175, 186–87 (2d Cir. 2000).

Here, Plaintiff's suggested approach tracks *Sims* and *Jaffee*: He will not rely on

privileged psychotherapy communications and will confine emotional-distress claims to garden-

variety harm. The appropriate course is not wholesale disclosure or use Mr. Thompson's mental

health records, but instead, appropriate safeguards that (1) preserve privilege, (2) prevent juror

confusion, and (3) permit non-privileged damages proof.

## IV.    DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S CRIMINAL BACKGROUND

### A.    Thompson's 2025 Criminal Case and Plea

Defendants first request the Court's permission to parade Plaintiff's "eleven" recent

felonies. Mtn. at 39-41. They're referring to the fact that Plaintiff recently entered a plea

agreement and is scheduled for sentencing in December 2025. That is legally impermissible and

should be precluded across the board. Even setting that aside, Thompson has not been sentenced

yet. For that reason, Defendants cannot provide a certificate of disposition.

Defendants' almost celebratory tone in cataloging Plaintiff's recent criminal proceedings

is inappropriate and prejudicial—particularly against the backdrop of the well-documented

structural realities of the U.S. criminal legal system. There is nothing "fair" or "equal" about

turning volume and labels into a character referendum.[1] Plaintiff has also indicated that he intends to seek withdrawal of his plea in the related criminal matter and reports that he accepted the plea principally to terminate a restrictive "lockdown" order imposed in connection with that case. On this record, any probative value of stacking multiple convictions by name and nature is vastly outweighed by the risk of unfair prejudice, confusion, and cumulative mini-trials. *See* Fed. R. Evid. 403, 609(a)(1).

### B. Plaintiff's 2023 Robbery Conviction and 2016 Bail Jumping Conviction

Apart from Plaintiff's pending criminal proceedings, Defendants seek to use a 2023 robbery conviction and 2016 bail jumping conviction on the ground that "[a]ll of these convictions must be admitted pursuant to Fed. R. Evid. 609(a)." Mtn. at 40. That goes far beyond the pale for several reasons.

In a civil case, evidence of a conviction "for a crime that, in the convicting jurisdiction, was punishable by . . . imprisonment for more than one year" may be admitted to impeach a witness's character for truthfulness, subject to Rule 403's protection. Convictions specifically involving dishonesty or false statements generally must be admitted to attack a witness's character for truthfulness under Rule 609. In balancing a conviction's probative value against its prejudicial effect, this Court considers "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at

---

[1] *See, e.g.,* Vera Institute of Justice, *How the Criminal Legal System Coerces People into Pleading Guilty*, https://www.vera.org/news/how-the-criminal-legal-system-coerces-people-into-pleading-guilty (last visited Oct. 20, 2025); Manhattan Institute, *Destroyed by Discovery: How New York State's Discovery Law Destabilizes the Criminal Justice System*, https://manhattan.institute/article/destroyed-by-discovery-how-new-york-states-discovery-law-destabilizes-the-criminal-justice-system (last visited Oct. 20, 2025); The Bail Project, *Having Your Day in Court*, https://bailproject.org/policy/having-your-day-in-court/ (last visited Oct. 20, 2025).

issue, and (4) the importance of the credibility of the witness." *Marshall v. Port Auth. of New York & New Jersey*, 2022 WL 17491006, at *2 (S.D.N.Y. Dec. 5, 2022) (internal quotations omitted)

For one thing, robbery is not a crime that reflects on a witness' honesty, consistent with Second Circuit precedent. "As a general rule in the Second Circuit, the violent crimes of robbery, burglary and assault are not deemed to fall within the meaning of the phrase 'dishonest act or false statement' as used in Rule 609(a)(2). *Ridge v. Davis*, 639 F. Supp. 3d 465, 473 (S.D.N.Y. 2022) (citation omitted); *see Doe v. Lima*, 2020 WL 728813, at *6 (S.D.N.Y. Feb. 13, 2020) (robbery "does not bear on the offender's character for veracity"); *see also Brown v. Cornell*, 2021 WL 2711511, at *6 (N.D.N.Y. July 1, 2021) (excluding attempted robbery conviction under Rule 609(b)). For another, the fact that Mr. Thompson pleaded guilty to a crime—i.e., satisfying the elements— reveals nothing about his credibility, whether that's his robbery or bail-jumping convictions. Defendants attempt to explore Mr. Thompson's criminal history would only needlessly delay the proceedings and risk confusing the jury. *Lima*, 2020 WL 728813, at *6 (finding the same as to a robbery conviction).

With respect to Plaintiff's 2016 bail-jumping charge, there is little probative value in, for many of the reasons stated above. For that crime, Plaintiff was sentenced on December 20, 2016 to 18 months to 3 years, released to parole on October 19, 2017, and discharged from parole on June 6, 2019. Because Rule 609(b)'s ten-year clock runs from the later of conviction or release from confinement, this entry is within the ten-year window (measured from the June 6, 2019 discharge date). Even so, it is not a crimen falsi offense; it does not require proof of a dishonest act or false statement, so Rule 609(a)(2) does not apply. Any impeachment value for truthfulness is modest, while the danger of unfair prejudice is substantial: "bail jumping" invites propensity

inferences (lawlessness/flight) and is unduly prejudicial about unrelated criminal proceedings. On the Rule 609(a)(1)/403 factors—its impeachment value is low, it's remoteness (conduct from 2016 with supervision ending in 2019), and the centrality of credibility in this case—the balance favors exclusion or, at most, the a limited form of admission for purposes of impeachment. *See* Fed. R. Evid. 403; 609(a)(1).

Plaintiff's criminal history is only relevant, if at all, to the issue of Plaintiff's damages. Thus, while Defendants may be permitted to inquire about the fact that Plaintiff was previously incarcerated in connection with a prior conviction, and the length of that incarceration, they should be precluded from introducing evidence of the nature of the prior conviction or the details of the underlying crime. *See, e.g., Phillips v. City of New York*, 871 F. Supp. 2d 200, 207 (E.D.N.Y. 2012) (allowing defendants to ask if plaintiff was previously arrested or incarcerated, and if so, what the dates and duration of the incarceration(s) were, but prohibiting them from "inquir[ing] into the nature of the arrests, or ask[ing] any other questions related to Plaintiff's prior arrests or convictions."); *Edwards v. City of New York*, No. 08-cv-2199, 2011 WL 2748665, at *4 (E.D.N.Y. Jul. 13, 2011) ("Defense counsel may be able to present evidence that plaintiff has been arrested and incarcerated before based on plaintiff's testimony during his case-in-chief, but may not in any event inquire as to the nature of the arrests and may only ask about the date and duration of incarceration."); *see also Lugo v. City of New York*, No. 14-cv-7185, 2018 WL 11466167, at *2 (S.D.N.Y. Jul. 13, 2018) (Pauley, J.) (allowing defendants to ask plaintiff whether he had previously been arrested and if so, when, but prohibiting them from "ask[ing] about underlying details").

Accordingly, Plaintiff respectfully requests that, if Defendants inquire about or introduce evidence of Plaintiff's prior conviction and incarceration, the Court give a limiting instruction to

11

the jury that evidence of Plaintiff's criminal history is only admissible for the determination of damages.

## V.    DEFENDANTS' DISCIPLINARY HISTORY AND DOC INVESTIGATION RECORDS SHOULD NOT BE PRECLUDED.

Defendants argue that Plaintiff should be precluded from offering any evidence pertaining to each individual-officer defendant's disciplinary history as well as any internal investigation files/reports from the Department of Corrections (DOC or Department).  See Def. Mtn. (Pts. VI & VII).

The City's absolute, categorical rule is far too broad. To name one thing, some materials are admissible for non-character purposes—bias, motive, impeachment by contradiction, notice to the City, feasibility of supervision/training, and to rebut a "spotless record" narrative if Defendants open the door. Any 404(b)/403 balancing should be granular, not sweeping.

### A.  Disciplinary Histories

Each individual defendant's disciplinary history is relevant for the jury to consider including for purposes of bias and character.  This disciplinary history is directly relevant to Roe's motive and intent, as the risk and severity of discipline increases when officers have previously received discipline. Under the Second Circuit's "inclusionary approach" in the 404(b) context, courts "admit evidence of prior bad acts if the evidence 'is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999)).

Here, the materials fall squarely within the "motive" and "intent" permitted uses of Rule 404(b) evidence; and its probative value far outweighs any unfair prejudice. Put another way, some materials are admissible for non-character purposes—bias, motive, impeachment by

contradiction, notice to the City, feasibility of supervision/training, and to rebut a "spotless

record" narrative if Defendants open the door. Any 404(b)/403 balancing should be granular, not

sweeping and across the board. Plus, in similar contexts, courts in this Circuit routinely allow

evidence of law enforcement officers' prior misconduct to show motive and intent. *See, e.g.,*

*Lewis v. City of Albany Police Dep't,* 547 F. Supp. 2d 191, 200 (N.D.N.Y. 2008), aff'd, 332 F.

App'x 641 (2d Cir. 2009) (prior complaints of defendant-officer's use of excessive force against

Black suspects were admissible to establish his motivation and intent); *Ismail v. Cohen*, 706 F.

Supp. 243, 245 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990).

### B.  DOC Investigation Files/Records

As with the individual defendants' personnel records and history, a categorical exclusion

would deprive the jury of probative context; at most, targeted rulings suffice. Among other

things, internal investigative steps and findings can be admissible for notice, impeachment, prior

inconsistent statements, or where Defendants rely on investigations to suggest their innocence.

Depending on foundation, portions may also qualify as business records or government

record/public records where trustworthiness is shown, for example.

Perhaps more important, separately, these investigations go to the heart of Plaintiff's trial

claims. Plaintiff alleges DOC failed to seriously respond to or investigate his allegations. The

Department's actual handling of those allegations—what was done, when, by whom, and with

what follow-up—is therefore central evidence for the jury. Any residual risk of prejudice can be

addressed with limiting instructions, redactions, and sidebar rulings—not a blanket ban.

### VI.  PLAINTIFF'S WITNESSES/EXHIBITS SHOULD NOT ALL BE PRECLUDED.

Defendants ask for a precautionary, blanket preclusion of "swaths" of Plaintiff's

witnesses based on Rule 26(a)(3). That is far too extreme.

By its terms, Rule 37 provides two circumstances where preclusion of withheld evidence is not warranted: where the failure to disclose the information is substantially justified or where the failure to disclose the evidence is harmless. *See* Fed. Civ. P. 37(c)(1); *see also Hein v. Cuprum*, 53 Fed. Appx. 134, 136 (2d Cir. 2002) (discussing the interplay between Rule 26 and Rule 37). As relevant here, "an omission or delay in disclosure is harmless where there is an absence of prejudice to the offended party." *Local 3621, Ems Officers Union v. City of New York*, 18-cv-4476 (LJL), 2021 U.S. Dist. LEXIS 104810, *34- 35 (S.D.N.Y. June 2, 2021).

As the Court and parties know, Plaintiff proceeded pro se for most of this case; any gaps flowed from that posture, not gamesmanship. Defendants never sought relief earlier and cannot credibly claim trial-by-ambush on the heels of trial—particularly where (1) witness identities largely appear in the JPTO and discovery record, (2) Plaintiff has already streamlined his list and does not intend to call several names included in the JPTO— including, for example, Andrea Thorton (No. 28)— and were only listed to give Defendants ample notice, and (3) credibility is central for trial, making categorical exclusion especially distortive. On this record, any disclosure lapse is either substantially justified or harmless.

## VII.    PLAINTIFF'S EXHIBITS AND EVIDENCE ARE RELEVANT AND ADMISSIBLE.

As a general matter, Defendants' 60-page submission lodges a litany of boilerplate objections to Plaintiff's exhibits—DOC records and policies, incarceration/housing logs, Plaintiff's own statements, medical and treatment records, among others. Most are not exclusionary as a matter of law and, at most, go to weight, not admissibility. These materials are probative for multiple non-hearsay purposes—notice, effect on the listener, timeline, and state of mind—and many are independently admissible as party admissions (Fed. R. Evid. 801(d)(2)), business records or

public records (Rules 803(6), 803(8)), or summaries of voluminous data (Rule 1006), subject to targeted redactions and a Rule 403 balance.

Plaintiff respectfully urges the Court to overrule the blanket objections and admit the categories identified herein, with tailored, document-specific rulings as needed at sidebar. To the extent any further argument or clarification would aid the Court, Plaintiff respectfully requests a brief opportunity to be heard at the pretrial conference to address any discrete exhibit the Court wishes to discuss, or which is not addressed below.

### A.    Security Camera Footage

Defendants seek to foreclose any reference to missing footage unless a separate spoliation motion succeeded pre-trial. That is too rigid. Jurors may hear that relevant footage does not exist and may consider reasonable inferences from investigative gaps, even absent a spoliation instruction, so long as counsel does not argue intentional destruction without proof. In other words, jurors may hear that relevant footage does not exist, what was requested, the retention policies, and what was (or was not) preserved, and may draw fair inferences. Ultimately, a reserved spoliation instruction remains available if warranted by the evidence

### B.    DOC Policies

Defendants additionally argue against admission of DOC policies. However, such policies are relevant to duty, foreseeability, custom/practice, training, and to evaluate departures from basic custodial standards. They are also proper for impeachment and to evaluate the reasonableness of actions in a jail setting. A categorical exclusion under Rules 401–403 would deprive jurors of context in a facility-specific case.

Courts have rejected that logic in similar contexts as well. *See, e.g., Gogol v. City of New York*, No. 15 Civ. 5703, 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) (denying motion to

preclude NYPD Patrol Guide provisions); *see also Tardif v. City of New York,* No. 13 Civ. 4056, 2017 WL 3634612, at \*6 (S.D.N.Y. Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable.")

## VIII.    DEFENDANTS' "SPECIFIC DOLLAR AMOUNT" AND INDEMNIFICATION ARGUMENTS ARE INAPPLICABLE.

Plaintiff does not have any intention of trying to suggest indemnification or ask for a specific dollar amount, but it's worth noting that courts in this District have repeatedly allowed plaintiffs to suggest specific dollar awards to the jury. *See, e.g., Castro v. Smith*, No. 16-cv-8147, 2023 WL 9022789, at \*3 (S.D.N.Y. Dec. 29, 2023) (Clarke, J.) ("Plaintiff will be permitted to suggest a specific dollar amount for pain and suffering."); *Dunham*, 2023 WL 3004623, at \*7 (Carter, J.) ("The Court will allow the [p]laintiff to suggest a specific amount from the jury. Defendants may submit a suggested limiting instruction."); *Rosario v. City of New York*, No. 18-cv-4023, 2021 WL 9455782, at \*2 (S.D.N.Y. Nov. 22, 2021) (Schofield, J.) (denying defendants' application to preclude plaintiff from suggesting a specific damages amount to the jury and granting the unopposed application to instruct the jury that it "alone may assign a dollar value to [p]laintiff's damages").

The Second Circuit favors a "flexible approach" where the Court may choose to permit counsel to mention specific figures and "impose reasonable limitations, including cautionary jury instructions." *See Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 912 (2d Cir. 1997); *Sharkey v. Penn Cent. Transp. Co.,* 493 F.2d 685, 689 (2d Cir. 1974) ("We believe that the matter of estimating damages for the guidance of the jury is best left largely to the discretion of the trial judge, and that, if [s]he decides to permit the argument, no error will be committed at least where counsel makes clear that his figures are only suggestions, and the court instructs the jurors that

16

the suggestions are not binding on them."). This aligns with the well-established principle that district courts may "'give counsel wide latitude in formulating their arguments to the jury.'" *See Marcoux v. Farm Serv. & Supplies, Inc.,* 290 F. Supp. 2d 457, 466 n.5 (S.D.N.Y. 2003).

Taken together, Defendants' proposed bar would skew the adversarial balance and deprive jurors of a principled anchor in a credibility case where intangible harms predominate. Any concern can be readily addressed by the Court's damages charge.

## IX.    DEFENDANTS' VERDICT SHEET IS MISLEADING.

Defendants' verdict sheet opens with, "Has plaintiff proven… that he was <u>sexually assaulted</u> by any defendant?" (Q1), then cascades into the same phrasing through damages and failure-to-intervene claims. (emphasis added). That type of wording risks implying a criminal-law frame ("sexual assault" as a crime proven by a person's status) rather than a civil elements-based finding on each defendant's conduct under the Fourteenth Amendment and state tort law. It also suggests a single global fact determination about "being sexually assaulted" rather than separate elements per defendant, location, date, and act. Replace with neutral, elements-tracking questions (e.g., whether Defendant  "engaged in sexual contact with Plaintiff while acting under color of state law," and whether such conduct proximately caused damages).

## X.    DEFENDANTS' JURY CHARES ARE SIMILARLY INAPPROPRIATE.

Defendants' proposed charge repeatedly reduces the federal claim to a binary "if you find he was sexually assaulted, find for Plaintiff," while invoking a "shock the conscience" gloss that risks confusing standards in custodial sexual abuse, where non-consensual sexual contact by state actors itself violates bodily integrity. The "was he sexually assaulted" refrain divorces the determination from each defendant's actions, intent, and causation—and blurs civil versus criminal framing. (See Defendants' charge: "if you find that Plaintiff was sexually assaulted, then you must find for Plaintiff…" & "shock the conscience" section.)

Plaintiff respectfully requests neutral, element-by-element instructions that track §1983 and failure-to-intervene elements, use standardized model charge language, and avoid criminalizing terminology untethered to elements.

## XI.    DEFENDANTS' VOIR DIRE IS IMPERMISSIBLE.

In various places, Defendants' voir dire concentrates jurors on arrests, incarceration, and hot-button carceral issues (arrest/incarceration histories; "should Rikers be closed?"; multiple iterations of "bias against correction officers"), which risks planting bias and suggesting this case is about criminal culpability rather than civil rights. Plaintiff requests that the Court: (1) conduct these topics, if at all, at sidebar with narrowly tailored, neutral phrasing; (2) eliminate duplicative questions that dwell on law-enforcement bias; and (3) include Plaintiff's proposed access-to-counsel and retaliation neutrality questions to ensure balanced screening.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' motion in limine.

Dated:
New York, NY

THE ATLANTIC FOUNDATION

By:    /s/  Sami Elamad

Sami Elamad (*pro hac vice*)
450 Lexington Ave., #69
New York, NY 10163
Tel. (646) 685-3954
Fax (646) 712-9501
sami@the-atlantic-foundation.org

*Attorneys for*
*Plaintiff Kwaine Thompson*